**Fred CUTO, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9807–CR–609.

Court of Appeals of Indiana.

April 21, 1999.

Annette K. Fancher, Office of Marion County Public Defender, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James A. Garrard, Deputy Attorney General Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge

In this interlocutory appeal, Fred Cuto raises five issues for review. As restated, the issues are:

1. Did the trial court properly interpret the Court of Appeals's decision which remanded for a new trial?

2. Does Ind.Code Ann. § 35–41–4–3 (West 1998), or do double jeopardy principles, bar reprosecution of the murder and felony murder charges?

3. If retrial is granted on only a portion of the original charges, will Cuto's right to a fair trial be prejudiced, including concerns regarding the possibility of receiving a lengthier sentence than if all charges had been tried together, collateral estoppel principles, and his right to testify in his own defense?

4. Does bifurcation of the proceedings risk inconsistent verdicts and "create needless oddity" in the record?

5. Does Criminal Rule 4(B) require the court to release Cuto pending his retrial?

We affirm.

This case has been on appeal to this court previously. In a memorandum decision, this court found the following facts:

During the early morning hours of September 9, 1993, Cuto, Michael Watkins, Robert Lasley and Jeffrey Barrons were talking, drinking and gambling on the porch of an abandoned house on Udell Avenue in Indianapolis. Sometime later that morning, Charles Bradshaw arrived, parked his car on the street across from the house and went to use a pay phone at a nearby liquor store.

After Bradshaw left his vehicle, Cuto walked across the street and sat on a tree stump next to Bradshaw's car. When Bradshaw returned to his car later that morning, Cuto approached him with a dark-colored automatic pistol in his hand and asked him if he wanted to buy the handgun. When Bradshaw began opening the car door, Cuto fired three shots, hitting Bradshaw in the leg and knocking him to the ground. Bradshaw, pleading for mercy, held out his hands and offered Cuto his money and car keys. In response, Cuto walked over to Bradshaw and removed a folded wad of money from his pockets. Cuto then began searching the car. When he finished, Cuto approached Bradshaw and stated that "I told you I was going to blow your mother fucking brains out." Record at 439. He then fatally shot Bradshaw in the head.

On September 16, 1993, Cuto was charged with Murder [Ind.Code Ann. § 35–42–1–1(1) (West 1993)], a felony, Murder during the Commission of a felony [IC § 35–42–1–1(2)], robbery [IC § 35–42–5–1], a class A felony, and Carrying a Handgun Without a License [Ind.Code Ann. § 35–47–2–1 (West 1993), IC § 35–47–2–23], a class A misdemeanor. From February 27, 1995, to March 2, 1995, a jury trial was conducted. During the trial, both Watkins and Lasley testified that they saw Cuto shoot Bradshaw in the head. After hearing all the evidence, the jury convicted Cuto as charged.

On May 12, 1995, Cuto filed a motion to set aside the verdicts on the basis of fraud and perjury, claiming that the State failed to disclose that it had made an agreement with Watkins to re-evaluate his plea agreement on an unrelated drug charge in exchange for his testimony at Cuto's trial. Following a hearing on the motion, the trial court, acting as a thirteenth juror, set aside Cuto's murder and felony murder convictions and entered a judgment of conviction on the lesser-included offense of aggravated battery. Thereafter, Cuto was sentenced to thirty years imprisonment for robbery, twenty years for aggravated battery and one year for carrying a handgun without a license. The sentences were ordered to be served concurrently for a total sentence of thirty years imprisonment.

*Record* at 363–64 (footnotes omitted). The trial court did not alter the convictions for robbery or carrying a handgun without a license.

Cuto filed his praecipe, thereby commencing an appeal in December 1995. In January 1996, the State moved to dismiss count II, the felony murder charge.[1] Cuto appealed and the State cross-appealed. This court's memorandum decision determined that the trial court, acting as a thirteenth juror, erred by entering a judgment on a lesser-included offense. The cause was remanded for further proceedings.

On remand, the trial court found that this court's memorandum decision affirmed the robbery conviction, and reversed and remanded for retrial on the murder and felony-murder convictions. As noted above, Cuto initiated this interlocutory appeal contending, *inter alia,* that the trial court erroneously interpreted this court's order which will cause him substantial prejudice. This court accepted jurisdiction.

---

1. Cuto does not raise any issue as to the effect of the dismissal.

### 1.

Cuto contends that the trial court misinterpreted this court's decision in the first appeal. The trial court determined that retrial was ordered for the murder and felony-murder counts only, leaving intact the convictions for robbery and carrying a handgun without a license. Cuto contends that because of various factors which will cause him prejudice and hamper his ability to receive a fair trial, the previous decision of this court should be construed to require retrial on the robbery charge as well.

In his first appeal, Cuto raised three issues. In his first issue, he complained that the trial court erred by convicting him of a lesser-included offense rather than ordering a new trial based upon the tainted testimony of a key witness. In his second issue, Cuto urged that the class A felony robbery conviction could not stand once the murder charges were vacated. He alleged that the conviction for a class B felony aggravated battery would not support elevating robbery to a class A felony because the charging information elevated robbery to a class A felony based upon the death of Bradshaw. In his third issue, Cuto compared and contrasted the definitions of robbery, as a class A felony; serious bodily injury; and aggravated battery, as a class B felony, in an attempt to demonstrate that the robbery conviction and the aggravated battery conviction were incompatible.

As noted by this court in the decision on the first appeal, Cuto's last two issues became moot if the trial court's decision to vacate the murder convictions and sentence Cuto on aggravated battery, a class B felony, was reversed. After reviewing Ind. Trial Rule 59, case law, and the trial court's stated intention to act as a thirteenth juror, this court determined that under the circumstances the trial court erred by not granting Cuto's request for a new trial. Once this court reversed the aggravated battery conviction and Cuto was granted his request for a new trial, the other issues premised on the lack of a conviction on the murder charges and the alleged incompatibility between ag-

gravated battery and the robbery charge were moot. Specifically, this court noted:

> Cuto also challenges his aggravated battery and robbery convictions on the basis of a material variance between the charging indictments and the evidence adduced at trial and on the grounds of double jeopardy. Having concluded that the trial court erred in entering a conviction of aggravated battery, however, we need not address his arguments because they relate to the conflicts arising from his convictions for both aggravated battery and robbery.

*Record* at 367 n.6.

We reemphasize in this decision: Cuto did not raise an independent challenge to the robbery conviction in his first appeal.[2] The robbery conviction was questioned only in the context of the aggravated battery conviction entered by the trial court.

Accordingly, the trial court properly interpreted this court's decision in the first appeal. That decision reversed the aggravated battery conviction and granted Cuto's request for retrial on the murder charges. Cuto's alternative arguments urging error which are presented in this appeal will be discussed within the framework established in the first appeal.

### 2.

This court's earlier decision in this case remanded the cause for retrial. Cuto did not request transfer, and the decision was certified. Cuto contends that principles of double jeopardy and IC § 35–41–4–3 (when prosecution barred for same offense) prohibit retrial. In other words, Cuto questions the efficacy of the decision of this court remanding for retrial.

■ Pursuant to the law of the case doctrine, an appellate court's decision on a legal issue is binding upon the trial court and the appellate tribunal in any subsequent appeal in the same case and involving substantially similar facts. *State v. Huffman*, 643 N.E.2d 899 (Ind.1994). The doctrine minimizes the necessity to relitigate legal issues

---

**2.** Cuto did not raise any challenge to the conviction for carrying a handgun without a license in his first appeal or this appeal.

once they have been determined by an appellate court. *Id.* The doctrine is a discretionary rule of practice. *Certain Northeast Annexation Area Landowners v. City of Fort Wayne,* 622 N.E.2d 548 (Ind.Ct.App.1993), *trans. denied.* Courts have the power to revisit a question previously decided, although as a rule they should be loathe to do so. *Id.* Failure to seek transfer from an adverse ruling will preclude later presentation of error on the same ground. *Boykin v. State,* 622 N.E.2d 568 (Ind.Ct.App.1993), *trans. denied.* The ruling becomes the law of the case. *Id.*

Additionally, we look to Cuto's request for relief made to the trial court and to this court during the first appeal. As noted above, after his convictions and before his sentencing, Cuto filed with the trial court a motion entitled "Motion to Set Aside Jury's Verdict On the Basis of Fraud and Perjury". *Record* at 264. Cuto's motion specifically requested a new trial. Although the concluding paragraph requested "all other just and proper relief", the paragraph requesting relief stated: "The only remedy for Mr. Cuto is to set aside the verdict, and try the case with the truth being known about the deal for Mr. Watkins' testimony." *Record* at 268.

After the trial court reduced the murder and felony murder convictions to aggravated battery, Cuto appealed to this court. In his appellate brief he complained that he was wrongly convicted of aggravated battery. He argued that he had not been charged with the lesser-included offense; thus, he was unprepared to present a defense for that crime. He requested a new trial.

■■■ The memorandum decision from the first appeal in this case granted Cuto the exact relief he had requested from the trial court and from this court. A defendant cannot invite error and then request relief on appeal based upon that ground. *Roach v. State,* 695 N.E.2d 934 (Ind.1998). An error invited by the complaining party is not reversible error. *Kingery v. State,* 659 N.E.2d 490 (Ind.1995).

■■■ An issue which has not been properly preserved for appeal may be addressed if the error is fundamental. *Roach,* 695

N.E.2d 934 (defendant who invited error could not circumvent invited error through the fundamental error doctrine where the error alleged was not fundamental). A double jeopardy violation, if shown, ensnares fundamental rights. *Cossel v. State,* 675 N.E.2d 355 (Ind.Ct.App.1996). Thus, despite the procedural posture of this case which implicates both law of the case and invited error, it appears that a double jeopardy violation would require the doctrines to yield to the constitution. Accordingly, we will review for a double jeopardy violation.

■■■ Cuto contends that IC § 35–41–4–3 prevents retrial. In pertinent part, the statute provides:

(a) A prosecution is barred if there was a former prosecution of the defendant based on the same facts and for commission of the same offense and if:

(1) the former prosecution resulted in an acquittal or a conviction of the defendant (A conviction of an included offense constitutes an acquittal of the greater offense, even if the conviction is subsequently set aside.)....

*Id.* The statute does not encompass all of the law on double jeopardy; instead, it is subject to delineation through case law to determine its proper interpretation and use. *See State v. Boze,* 482 N.E.2d 276 (Ind.Ct.App.1985). IC § 35–41–4–3 is a general statute that outlines circumstances implicating double jeopardy and does not consider when retrial is appropriate.

■■■ The Fifth Amendment to the United States Constitution "provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *U.S. v. Dixon,* 509 U.S. 688, 695–96, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). The double jeopardy clause provides for three basic protections:

[The Clause] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense ...

*State v. Boze*, 482 N.E.2d at 278 (quoting *Ohio v. Johnson*, 467 U.S. 493, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425 (1984)).

▪ Double jeopardy bars retrial if a conviction is reversed on the basis of insufficient evidence. *Vest v. State*, 621 N.E.2d 1094 (Ind.Ct.App.1993). In the first appeal this court specifically stated, "the trial court could not have concluded that the jury's verdict was clearly erroneous or unsupported by the evidence in light of the other evidence presented at trial, including the testimony of a witness other than Watkins who stated that he saw Cuto shoot Bradshaw in the head". *Record* at 368 n.5. This court also noted,

> T.R. 59(J)(7) gives the trial court authority, under a prima facie evidence approach, to alter a verdict if it is clearly erroneous or unsupported by the evidence. However, it is clear in the present case that the trial court was not applying this approach in its review of Cuto's case. For example, the trial court specifically determined that Watkins' testimony was unreliable, which indicates that the trial court reweighed the evidence by assessing the credibility of a witness. This type of review is only available under the thirteenth juror approach.

*Record* at 368 n.5 (citations omitted). We observed that the thirteenth juror principle involves a fact-finding process and determinations as to the *weight* of evidence. The trial court reassessed the credibility of one witness which implicates the weight, not the sufficiency of the evidence.

▪ In *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), the Court distinguished between reversal based upon the weight and reversal based upon the sufficiency of the evidence. Absent law to the contrary within a given state, retrial is allowed in the former circumstance, but not in the latter. *Id.* The parties do not direct us to and our own research does not reveal common law or statutory authority which would not allow such a distinction.

The *Tibbs* court reviewed the familiar policies prohibiting prosecution in a second trial due to a failure to muster adequate evidence at the first trial which ends in acquittal or is vacated due to insufficient evidence. *Id.* The Court explained:

> As we suggested just last Term, these policies do not have the same force when a judge disagrees with a jury's resolution of conflicting evidence and concludes that a guilty verdict is against the weight of the evidence. A reversal on this ground, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Instead, the appellate court sits as a "thirteenth juror" and disagrees with the jury's resolution of the conflicting testimony. This difference of opinion no more signifies acquittal than does a disagreement among the jurors themselves. A deadlocked jury, we consistently have recognized, does not result in an acquittal barring retrial under the Double Jeopardy Clause. Similarly, an appellate court's disagreement with the jurors' weighing of the evidence does not require the special deference accorded verdicts of acquittal.
>
> A reversal based on the weight of the evidence, moreover, can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict. The reversal simply affords the defendant a second opportunity to seek a favorable judgment. An appellate court's decision to give the defendant his second chance does not create "an unacceptably high risk that the Government, with its superior resources, [will] wear down [the] defendant" and obtain conviction solely through its persistence.

*Id.* at 42–43, 102 S.Ct. 2211 (citations omitted) (footnotes omitted).

▪ Retrial is allowed when a conviction is reversed on appeal for error, and the evidence at trial was sufficient to support the original conviction. *See Evans v. State*, 571 N.E.2d 1231 (Ind.1991); *see also Tibbs*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652. Evidence is insufficient to convict when no rational factfinder could have found the defendant guilty beyond a reasonable doubt. *Tibbs*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652. As we discussed in the first appeal and reiterate here, even without the tainted testimony of Watkins, the evidence

was sufficient to convict Cuto of all original charges. Consequently, retrial on the murder charges does not offend principles of double jeopardy in the present case.

### 3.

Within the purview of double jeopardy, Cuto contends that retrial would violate his right to a fair trial and subject him to multiple punishments for the same offense, and that retrial should be barred under principles of collateral estoppel. Cuto also contends that his right to testify on his own behalf will be eclipsed by the conviction for robbery from the first trial regarding the same incident.

 As noted above, the double jeopardy protection is applicable to successive punishments and to successive prosecutions for the same criminal act. *U.S. v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556. In both contexts, when two offenses are judged under the "same-elements" or *Blockburger*[3] test, unless each offense contains an element not found in the other, the offenses are the same and double jeopardy bars additional punishment or prosecution. *Id.*

 In *Games v. State,* 684 N.E.2d 466 (Ind.1997), *modified on other grounds,* 690 N.E.2d 211 (Ind.1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 98, 142 L.Ed.2d 78 (1998), and *Grinstead v. State,* 684 N.E.2d 482 (Ind.1997), the Indiana Supreme Court announced that Indiana's previous interpretations of the federal Double Jeopardy Clause with regard to multiple punishments did not comport with federal jurisprudence as explained in *Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556. On the question of multiple punishments, the court must first determine whether the legislature in-

tended multiple punishments for a single act. *Games,* 684 N.E.2d 466. If it is unclear whether multiple punishments were intended, under *Dixon,* the focus shifts to the elements of the offenses in question, rather than upon the facts which must be proven. *See id.* If it is clear that each statute requires proof of an additional fact which the other does not, convictions for more than one crime stemming from a single act will not violate double jeopardy. Consequently, "the ultimate protection afforded by the double jeopardy clause is that a defendant will not be punished twice for the same offense, as established by the legislature, not that the defendant will not be punished for several offenses resulting from the same act." *Moore v. State,* 691 N.E.2d 1232 (Ind.Ct.App. 1998).

 Since we no longer look to charging informations to determine whether crimes are the same for double jeopardy purposes, it is insignificant that Cuto was charged with robbery as a class A felony based upon the death of Bradshaw and that he was charged with murder. Murder and felony murder require proof of a knowing or intentional killing of another. IC § 35-42-1-1. Class A felony robbery requires a knowing or intentional taking of property from another which causes serious bodily injury.[4] IC § 35-42-5-1. Examination of the elements of the crimes reveals that they are not the same for double jeopardy purposes.

Cuto contends that as a practical matter, bifurcating the proceedings may subject him to a lengthier sentence than that to which he would have been subjected had the proceedings remained together. Cuto engages in speculation as to whether the trial court will merge[5] murder and felony murder as was

---

3. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

4. It is noteworthy that evidence was introduced at the first trial that at least one version of Cuto's statement to police included an admission he shot Bradshaw in the leg. That shooting would certainly support elevating the robbery charge to a class A felony without the killing of Bradshaw.

5. In *Redman v. State,* 679 N.E.2d 927 (Ind.Ct. App.1997), *trans. denied,* 690 N.E.2d 1179 (Ind. 1997), this court noted that the term "merger" is

often used to describe the trial court's decision to forego sentencing on an included offense in light of a conviction upon a greater offense or when one conviction must be vacated because it is subsumed within another conviction. We concluded that vacating the offense which would have "merged" into the greater offense is the more appropriate resolution, but that given that trial courts cannot know that the greater offense will not be reversed on appeal, it will remain an issue for this court.

the effect in the first proceeding and how he will be sentenced. In *Moore v. State*, 653 N.E.2d 1010 (Ind.Ct.App.1995), *trans.. denied*,[6] this court explained that after retrial on less than all of the original convictions, the trial court may vacate convictions which were upheld on appeal if the convictions on retrial would offend double jeopardy's multiple punishment prohibition. *See also Redman v. State*, 679 N.E.2d 927 (Ind.Ct.App. 1997) (discussing options available to trial courts after retrial on less than all of the original convictions), *trans. denied*, 690 N.E.2d 1179 (Ind.1997).

It is of no moment when the trial occurs on the remaining charges. Courts must still look to the elements to determine whether multiple punishment is allowed. Further, the court is still bound by the applicable sentencing statutes. We refuse to engage in speculation as to all possible sentencing variations based upon what Cuto might or might not be convicted of on retrial.

■ Next, Cuto contends that on retrial of the murder charges collateral estoppel will relieve the State of its burden to prove the robbery as the underlying felony for a felony murder charge and will allow the State to circumvent Ind. Evid. Rule 404(b) provisions to present evidence of the robbery conviction. Thus, according to Cuto, his right to a fair trial will be placed at risk.

■ As the State notes in its Brief of Appellee, generally the question whether collateral estoppel has established an issue which cannot be relitigated appears in the criminal context as an integral part of the protection against double jeopardy. *Davis v. State*, 691 N.E.2d 1285 (Ind.Ct.App.1998). While traditionally jeopardy prohibits the prosecution of the crime, collateral estoppel, "in a more modest fashion, simply forbids the government from relitigating certain facts in order to establish the fact of the crime." *Id.* at 1288 (quoting *Segovia v. State*, 666 N.E.2d 105, 107 (Ind.Ct.App.1996)). "[W]hen the State has received an adverse decision of a

critical *issue of fact* in a trial," collateral estoppel prevents relitigation of the adversely determined issue in a later proceeding. *Davis*, 691 N.E.2d at 1288 (quoting *Townsend v. State*, 632 N.E.2d 727, 731 (Ind.1994) (emphasis provided in *Davis* )). Here, Cuto suggests that collateral estoppel will prevent him from relitigating his guilt on the robbery charge. If, as his argument goes, the robbery conviction stands, the State will not be required to present evidence of that element within the felony murder proceedings.

In effect, Cuto again asks us to engage in speculation. He is correct that the robbery conviction remains and will relieve the State of the burden of proving that element within felony murder on retrial. Cuto's argument fails to recognize that the State met its burden of proof beyond a reasonable doubt as to the robbery which resulted in his conviction at the first trial. The robbery conviction has not been disturbed. Rather than relieving the State of its burden of proof on robbery, in actuality the State already met its burden. Allowing retrial on the murder charges, which were sufficiently proven at the first trial, affords Cuto a second chance to require the State to meet its burden on the remaining elements.

■ The rules of evidence apply fully to Cuto's retrial. How the evidence of the robbery conviction may be presented to the jury is a matter to be resolved at trial with regard to the rules of evidence and relevant case law. "The trial judge must conduct the proceedings in a manner that facilitates ascertainment of the truth, insures fairness, and obtains economy of time and effort commensurate with the rights of both society and the criminal defendant." *James v. State*, 613 N.E.2d 15, 23 (Ind.1993). Within these confines, the trial court is accorded broad discretion in determining the manner in which evidence is presented to a jury during trial. *See id.; see also Timberlake v. State*, 690 N.E.2d 243 (Ind.1997), *cert. denied*, — U.S. ——, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999).

---

**6.** *Moore* predates *Games, Grinstead*, and their progeny. The double jeopardy discussion within *Moore*, 653 N.E.2d 1010, regarding examination of charging informations for multiple punishments is no longer viable. In *Moore v. State*, 698

N.E.2d 1203 (Ind.Ct.App.1998), by interlocutory appeal, this court addressed the proper double jeopardy analysis in light of recent Indiana Supreme Court decisions.

By way of example we note that evidence, although relevant, may be excluded or excluded at certain stages of the proceedings if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, or needless presentation of cumulative evidence. *See Tompkins v. State*, 669 N.E.2d 394 (Ind. 1996); Ind. Evidence Rule 403.

Cuto's contention that the robbery conviction will impede his right to testify for fear of impeachment does not present a justiciable issue. Our first opinion allows the State to retry Cuto on the murder charges, but does not require it to do so.[7] If Cuto is not retried or is not retried on felony murder, this court cannot speculate as to the evidence that will be presented, or the manner in which evidentiary issues will be determined based upon the parties's motions and objections. As we have noted, upon proper motion, the trial court's management of the proceedings including evidentiary rulings may obviate the perceived potential prejudice to Cuto's right to a fair trial.

 Despite the interlocutory nature of this appeal, we have engaged in a discussion based upon the known circumstances and the implications of those circumstances relative to a retrial. Courts on review neither engage in speculation nor render advisory opinions. *See State ex rel. Goldsmith v. Superior Court of Marion County*, 463 N.E.2d 273 (Ind.1984); *Cooley v. State*, 640 N.E.2d 433 (Ind.Ct.App.1994), *reh'g. denied*, 642 N.E.2d 284, *trans. denied*; *Richardson v. State*, 402 N.E.2d 1012 (Ind.Ct.App.1980). Thus, we are prohibited from speculating as to each possible ramification of the existing circumstances upon retrial. Instead, we refer the parties to our foregoing analyses.

### 4.

Cuto contends that trying him on a portion of the original charges separately from the standing convictions risks inconsistent verdicts and "creates needless oddity" in the record. In part, Cuto reiterates questions

regarding sentencing. We direct Cuto to our foregoing discussion. Cuto also complains that the second proceeding will complicate the record of proceedings for another direct appeal or for post-conviction relief. Cuto does not present any authority for error based upon a complicated record. Moreover, we do not recognize any ground for error based upon Cuto's allegation.

### 5.

 Cuto raises issues regarding his speedy trial request made pursuant to Ind. Crim. Rule 4(B). He argues that the trial court set his retrial outside of the seventy-day period prescribed within the rule, which should require discharge. Discharge is not required when certain conditions excuse the failure to bring the defendant to trial within the time period after the speedy trial request is made. *Jackson v. State*, 663 N.E.2d 766 (Ind.1996). The failure is excused when the defendant causes the delay or when the court's calendar is too congested to hold the trial within the prescribed period. *Id.* Despite Cuto's assertions to the contrary, the trial court adequately stated on the record that the calendar was too congested to hold the trial during the prescribed period. The trial was set ten days beyond the period.

Cuto recognizes that he did not move for discharge as required. *See Roseborough v. State*, 625 N.E.2d 1223 (Ind.1993) (the right to trial within seventy days is not self-executing; where a defendant does not make a motion for discharge following the period, the issue is waived). He complains that he was prevented from pursuing his speedy trial request because of the intervening interlocutory appeal. Cuto suggests that he was forced to abandon his speedy trial request and bring this interlocutory appeal because the trial court erroneously interpreted this court's previous decision to find that his robbery conviction stands. The robbery conviction and sentence prevent his discharge.

As determined in the first issue, the trial court properly interpreted this court's previous decision in this case. The robbery con-

---

7. Allowing retrial cannot be construed as demanding such. The prosecuting attorney decides

which cases with which to proceed.

viction and the conviction for carrying a handgun without a license remain in effect. No error can be predicated upon the trial court's actions finding that the convictions remain. Cuto's claim for discharge based upon the delay required by this interlocutory appeal is without merit.

The trial court's judgment finding that this court's previous memorandum decision did not reverse the robbery conviction is affirmed and the cause is remanded for any further proceedings beyond this interlocutory appeal consistent with this decision.

Judgment affirmed.

KIRSCH and MATTINGLY, JJ., concur.