**Ervin CRABTREE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0102–CR–96.**

Court of Appeals of Indiana.

Feb. 8, 2002.

Robert D. King, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. LaFuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

Ervin Crabtree appeals the denial of his motion to suppress evidence. He raises two issues on appeal, which we restate as:

1. Whether a person is subjected to an investigatory stop when an officer shines his flashlight on the suspect and shouts "get your hands up," but the suspect does not comply and instead crouches down and throws an object away; and

2. Whether an officer has reasonable suspicion to support an investigatory stop when the officer has been dispatched to investigate a group of people around a loud car stereo but finds a lone suspect hiding behind a car from which no sound is emanating.

We find that Crabtree was subjected to an investigatory stop but that the police had reasonable suspicion to support the stop,[1] and we accordingly affirm.

---

1. Because we find the investigatory stop was supported by reasonable suspicion, we do not address Crabtree's alternative argument that his abandonment of the cocaine was involuntary because it was done in response to improper police conduct.

## FACTS AND PROCEDURAL HISTORY[2]

On May 11, 2001 at about 4:30 a.m., two Indianapolis police officers in two different cars were dispatched to the 3100 block of Broadway after police received an anonymous report of a loud car stereo. As one car approached the scene, the officer in the second car, Thomas Stout, stopped on 31st street and turned the car's lights off so he wouldn't be seen. The anonymous report had indicated there were several African–American males around the car with the loud stereo, so Officer Stout was looking for a group of people.

Stout saw Crabtree, who appeared to be hiding behind a car that had its lights off and was not running. The car was legally parked and there was no music coming from it. Officer Stout assumed Crabtree was hiding because he was crouched down and was straining to look over the car.

Stout turned onto Broadway so he could talk to Crabtree. As Crabtree stood up, Officer Stout left his car, began walking toward Crabtree, shined a flashlight on him and ordered him to "get your hands up." (Tr. at 21.) Officer Stout had not observed any illegal activity at that point, but ordered Crabtree to raise his hands for the officer's safety. At the hearing on the motion to suppress, Officer Stout testified that as he approached Crabtree "several people began running," (Tr. at 22), but he also testified that "in the area where [Crabtree] was, there was no one else." (*Id.* at 10.)[3]

As Crabtree was ordered to put his hands up, he threw a plastic bag toward a fence. Crabtree then "laid down and put his hands out." (*Id.* at 25.) Officer Stout found a bag of marijuana on the seat of the car where Crabtree was hiding and he then handcuffed Crabtree. At some point, the officer drew his gun on Crabtree because Crabtree "wasn't doing what I was telling him to do." (*Id.* at 26.) Officer Stout retrieved the bag Crabtree threw and found cocaine in it. Crabtree moved to suppress the cocaine and marijuana evidence, and his motion was denied.

## DISCUSSION AND DECISION

We review the denial of a motion to suppress evidence in a manner similar to allegations of insufficient evidence. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, in reviewing a denial of a motion to suppress, we must also consider the uncontested evidence most favorable to the defendant. *Washington v. State* 740 N.E.2d 1241, 1243 (Ind.Ct.App. 2000), *transfer denied* 753 N.E.2d 7 (Ind. 2001). Although we generally review a trial court's decision to admit evidence despite a motion to suppress under an abuse-of-discretion standard, the ultimate determination whether an officer had reasonable suspicion to conduct an investigatory stop is reviewed *de novo. Burkett v. State,* 736 N.E.2d 304, 306 (Ind.Ct.App.2000).

### 1. *The Investigatory Stop*

Crabtree was subjected to an investigatory stop when the officer left his

---

**2.** Oral argument was held on October 9, 2001 at Decatur Central High School. We gratefully acknowledge the hospitality of the Decatur Central students, faculty, and administration and the capable advocacy of counsel.

**3.** The court heard other varying testimony as to whether Crabtree was alone. One officer announced on his radio that "he didn't see anybody." (App. at 30.) Officer Stout stated in a deposition that he tried to radio the other officer to tell him "there were several people" and one was hiding behind a car. (*Id.* at 31.)

car, began walking toward Crabtree, shined a flashlight on him and ordered him to "get your hands up." An officer may stop and briefly detain an individual for investigatory purposes if, based upon specific and articulable facts, the officer has a reasonable suspicion of criminal activity even if the officer lacks probable cause to make an arrest. *Lockett v. State,* 747 N.E.2d 539, 544 (Ind.2001), *reh'g denied, citing Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In determining whether a *Terry* stop is reasonable, we apply a two-part test: "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id., quoting Terry,* 392 U.S. at 19–20, 88 S.Ct. 1868. The reasonableness of a *Terry* stop is judged against an objective standard because "[a]nything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction." *Id., quoting Terry,* 392 U.S. at 21–22, 88 S.Ct. 1868.

In determining whether a contact between a citizen and a police officer is a "stop" that implicates the *Terry* protections, the crucial consideration is whether the citizen was under a reasonable impression that he was not free to leave the officer's presence. *United States v. Wylie,* 569 F.2d 62, 68 (D.C.Cir.1977). The test for whether such a reasonable impression existed is what a reasonable person, innocent of any crime, would have thought had he been in the citizen's shoes. *Id.*

The State characterizes Crabtree's encounter with Officer Stout as the type of "casual and brief inquiry of a citizen which involves neither an arrest nor a stop." *Overstreet v. State,* 724 N.E.2d 661, 663 (Ind.Ct.App.2000), *transfer denied* 741 N.E.2d 1251 (Ind.2000). In this type of "consensual encounter," the State contends, no Fourth Amendment interest is implicated. *Id.* In *Overstreet,* an officer saw Overstreet look in a mailbox at about 6:00 a.m., then close the mailbox door and hurriedly walk to a parked car and drive away. Overstreet drove to a nearby gas station and was pumping air into one of his automobile tires when the officer approached him. The officer got out of his vehicle, walked up to Overstreet, asked Overstreet what he had been doing at the mailbox and asked him for identification. Overstreet volunteered that his operator's license was suspended.

We noted that Overstreet was not detained and the officer did not restrict his movement in any way. Rather, the officer merely asked Overstreet about his actions at the mailbox and asked him for identification. Accordingly, we declined to hold that

> this brief encounter and inquiry constitutes a *Terry* stop that required a reasonable suspicion of criminal activity. Not every encounter between a police officer and a citizen amounts to a seizure requiring objective justification ... [a]s long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy to require some particularized and objective justification. Examples of circumstances under which a reasonable person would have believed he was not free to leave include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Id.* at 664 (citations and footnote omitted).

Officer Stout's interaction with Crabtree was not the kind of "casual and

brief inquiry"[4] involved in *Overstreet*. The first words from Officer Stout were his shout "get your hands up," and after Crabtree failed to comply he was immediately apprehended and handcuffed. Stout, unlike the officer in *Overstreet*, did not merely ask Crabtree for identification and inquire whether Crabtree was involved with the offense that was being investigated.

The Seventh Circuit found in *United States v. Packer*, 15 F.3d 654, 657 (7th Cir.1994) that somewhat similar police behavior was an investigatory stop that must be supported by reasonable suspicion. In *Packer*, the police responded to an anonymous tip regarding a suspicious vehicle in a bad neighborhood at about one in the morning. The officers parked their cars in front of and behind the defendant's car and shined a light into the car. As an officer approached the car, she asked the occupants to put their hands in the air where she could see them. "While the officer's prudential procedures are of course fully justified by concerns for police safety, a reasonable person in defendant's position would not feel that he was free to leave." *Id.* Similarly, a reasonable person in Crabtree's position would not feel that he was free to leave.

### 2. *Reasonable Suspicion*

While Crabtree was subjected to an investigatory stop, Officer Stout had reasonable suspicion to justify the stop. Law enforcement officers may make a brief investigatory stop of a person provided they have a reasonable and articulable suspicion that the person has been, is, or is about to be engaged in breaking the law.[5] Whether a particular fact situation justifies an investigatory stop is determined on a case-by-case basis. The "reasonable suspicion" requirement of the Fourth Amendment is satisfied if the facts known to the officer at the moment of the stop are such that a person "of reasonable caution" would believe that the "action taken was appropriate." *Lyons v. State*, 735 N.E.2d 1179, 1183–84 (Ind.Ct.App.2000). In other words, the requirement is satisfied where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. Reasonable suspicion entails something more than an inchoate and unparticularized suspicion or hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence. Consideration of the totality of the circumstances necessarily includes a determination of whether the defendant's own actions were suspicious. *Id.* at 1184.

At the outset, we note that neither presence in a high-crime neighborhood alone, nor an anonymous tip alone that is not confirmed in significant aspects, may constitute reasonable suspicion. *Burkett*, 736 N.E.2d at 306–07. However, presence in a high-crime area can be considered as a factor in the totality of the circumstances confronting an officer at the time of a stop. *Green v. State*, 719 N.E.2d 426, 429 (Ind.Ct.App.1999). Crabtree was

---

**4.** The State characterizes the officer's shout of "get your hands up" as "merely ask[ing] Defendant to raise his hands because [the officer] was concerned for his own safety." (Br. of Appellee at 4.)

**5.** The dissent suggests the initial stop was invalid in part because Officer Stout was investigating an ordinance violation and not criminal activity. We note that a brief detention is permitted when a police officer believes a person has committed an infraction or an ordinance violation. *Conwell v. State*, 714 N.E.2d 764, 766 (Ind.Ct.App.1999). And see *Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979).

seen next to a car with an open door. The car was at a location where there had been a complaint of a loud car stereo. Crabtree appeared to be hiding behind the car. He was crouched down and was straining to look over the car. In addition, it was approximately 4:30 in the morning. The State argues the officer had "a reasonable suspicion that Defendant had turned down his car stereo when Defendant observed the other patrol car and was hiding from that patrol car." (Br. of Appellee at 5–6.) In light of the totality of the circumstances, we cannot say the trial court erred to the extent it determined the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity had occurred or was about to occur.

## CONCLUSION

Officer Stout's interaction with Crabtree was an investigatory stop that implicated the *Terry* Fourth Amendment protections; however, the admission of the evidence seized pursuant to the stop was not error because the Officer had reasonable suspicion that criminal activity had occurred.

Affirmed.

BARNES, J., concurs.

DARDEN, J., dissents with opinion.

DARDEN, Judge, dissenting.

I would respectfully dissent from the portion of the majority's decision with regard to the existence of a reasonable suspicion to justify the investigatory stop. I believe that Officer Stout's equivocal testimony, including his admission of an inability to recall the timing of the sequence of the events, especially the drawing of his weapon to force Crabtree's compliance with his requests, together with his admission that Crabtree's actions were consis-

tent with legal activity, forecloses a determination that the investigatory stop was supported by a reasonable suspicion of criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

As explained in the majority decision, the *Terry* two-part reasonableness test requires a reviewing court to discern "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* The State failed to present evidence of reasonableness as required by the *Terry* standard, *i.e.*, that the stop was justified at its inception and was reasonably related to the activity upon which the officer based the intrusion.

"[T]he ultimate determination of reasonable suspicion is reviewed *de novo.*" *Burkett v. State*, 736 N.E.2d 304, 306 (Ind. Ct.App.2000). The evidence to support a reasonable suspicion that criminal activity is afoot must rise to "some minimum level of objective justification" for the investigatory stop of a person to be valid. *Id.* Reasonable suspicion must be based upon more than an officer's "inchoate and unparticularized suspicion or 'hunch.'" *Terry*, 392 U.S. at 27, 88 S.Ct. 1868; *see also Webb v. State*, 714 N.E.2d 787, 788 (Ind.Ct. App.1999).

After reviewing the evidence in the record and the evidence relied upon by the State and recited by the majority, I believe the State failed to present any evidence of criminal activity, or the timing of the sequence of the events to justify the stop. In fact, during cross-examination of Officer Stout at the suppression hearing, he admitted that he could not recall the order of the events that occurred. He also agreed that Crabtree's conduct when the first officer drove by was consistent with legal activity, such as tying a shoelace. Ulti-

mately, when Officer Stout was pressed for a characterization of Crabtree's actions before Officer Stout approached him, the following colloquy occurred:

Q. ... [W]hat suspected illegal activity had he engaged in when you told him to get his hands up?

A. Nothing.

Q. And then you eventually drew your gun on Mr. Crabtree, is that correct?

A. Yes.

Q. And why did you draw your gun on him?

A. He wasn't doing what I was telling him to do.

Q. So, is it your testimony here today that when you approached Mr. Crabtree, decided to investigate a loud car stereo and his connection to that loud car stereo, he hadn't done anything wrong—other than crouching down—maybe tying his shoes.

A. No.

Q. But does that—well—did I misstate that. Is that your testimony?

A. No—that's correct.

(Tr. 26).[6]

The State's evidence at the suppression hearing does not reveal an objective basis to support a reasonable suspicion that criminal activity was afoot. Review of the evidence from the entire suppression hearing reveals that: 1) the police were called to investigate a loud stereo, the playing of which would likely constitute a local ordinance violation; 2) Officer Stout stated that Crabtree's actions were consistent with legal activity; and 3) Officer Stout could not recall the timing of the sequence of the events that occurred, including when he drew his weapon to require Crabtree's compliance with his requests.

From its inception, the stop was invalid. Officer Stout was investigating a possible ordinance violation, not criminal activity, when he saw Crabtree engaging in actions consistent with legal conduct. To say that Crabtree's actions before Officer Stout approached him were consistent with legal activity but also "suspicious" would be incongruent. Officer Stout's testimony belies the State's assertion that Officer Stout had a reasonable suspicion to initiate an investigatory stop of Crabtree.

In light of Officer Stout's testimony, the trial court could not, and we may not, speculate as to whether any of the events that took place after Officer Stout approached Crabtree were of a nature that would supply the necessary reasonable suspicion for the investigatory stop. *See Washington v. State*, 740 N.E.2d 1241, 1243 (Ind.Ct.App.2000) (on review of a motion to suppress, we must consider the uncontested evidence most favorable to the defendant); *Cuto v. State*, 709 N.E.2d 356, 365 (Ind.Ct.App.1999) (courts on review do not engage in speculation).

Further, the necessary reasonable suspicion must exist prior to the investigatory stop. *See Terry*, 392 U.S. at 19–20, 88 S.Ct. 1868; *cf. D.K. v. State*, 736 N.E.2d 758, 762 (Ind.Ct.App.2000) (where officer decided not to cite the defendant after he, *inter alia*, committed traffic offenses and refused to roll down his window at the officer's request, the State could not rely upon those factors to justify a subsequent *Terry*-type investigatory stop by a canine sweep based upon reasonable suspicion).

---

**6.** On redirect examination, Officer Stout stated that he ordered Crabtree to raise his hands because for his own safety, he "wanted to be able to see that he had nothing in his hands."

(Tr. 27). As discussed below, officer safety concerns do not provide a reasonable suspicion under the *Terry* test.

Absent unambiguous evidence of the timing of the sequence of events, we should not view the jumble of circumstances which occurred after Officer Stout approached Crabtree and assume that one or more might have occurred prior to Officer Stout drawing his weapon and requiring Crabtree to raise his hands which would have revealed the object he held and then threw.

Without the requisite specific and articulable facts to justify the investigatory stop based upon a reasonable suspicion of criminal activity, we are left with the "inchoate and unparticularized suspicion or 'hunch'" of the police officer. *See Terry,* 392 U.S. at 27, 88 S.Ct. 1868. Thus, to find justification for the investigatory stop under these circumstances, it is apparent that the trial court improperly assumed the timing of the sequence of events.

In addition to Crabtree's actions, the only other basis offered by the State and Officer Stout for ordering Crabtree to raise his hands was officer safety. Officer Stout testified that when he asked Crabtree to raise his hands, he did so for his own safety and without suspicion that Crabtree "had engaged in … any illegal activity." (Tr. 26). Officer safety is a factor that may allow an officer to conduct a limited weapons search under *Terry* once a reasonable suspicion of criminal activity has established a basis for an investigatory stop. Here, we do not have a reasonable basis for an investigatory stop. Standing alone, officer safety cannot form the basis for an objectively reasonable suspicion of criminal activity. *Cf. Webb,* 714 N.E.2d at 788 (reasonable suspicion not established when defendant who turned away from officer and placed his hands down the front of his pants, was subjected to search for officer safety); *see also Camp v. State,* 751 N.E.2d 299, 302 (Ind.Ct.App.2001) (expressing concern that officer routinely conducts *"Terry* searches" because in his profession he always had reason to believe that people had a weapon).

The need for a *Terry*-type pat-down search most commonly occurs during traffic stops. *See Wilson v. State,* 745 N.E.2d 789, 791–93 (Ind.2001). However, then the justification for the investigatory stop is provided by the traffic violation. The question becomes whether the pat-down or other search is reasonable for officer safety. *Id.* (expressing concern that officers may not routinely place motorists in their patrol cars as a pretext for conducting pat-down searches for officer safety); *but see Lockett v. State,* 747 N.E.2d 539, 542–43 (Ind.2001) (during routine traffic stops, for officer safety reasons officers may inquire whether motorists have a weapon). It would be circular reasoning indeed if an officer without reasonable suspicion to conduct an investigatory stop, nonetheless, could order citizens to raise their hands or allow a pat-down search of their person for the safety of the officer approaching them.[7]

The motion to suppress should have been granted.

---

**7.** In *United States v. Burton,* 228 F.3d 524, 527–28 (4th Cir.2000), the court determined that an officer may, to the extent any citizen can, seek cooperation from citizens on the street without a reasonable suspicion of criminal activity. However, the citizen encountered without reasonable suspicion is free to ignore a police interrogator. *Id.* An officer may not conduct a search of a citizen for his safety or that of his fellow officers during a routine police-citizen encounter absent specific articulable facts upon which to base a reasonable suspicion for an investigatory detention. *Id.*