## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 22 2018, 9:28 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew M. Kubacki
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Keyno W. Thomas,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | May 22, 2018<br><br>Court of Appeals Case No.<br>49A02-1708-CR-1853<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Amy Jones, Judge<br><br>The Honorable David Hooper, Magistrate<br><br>Trial Court Cause No.<br>49G08-1611-CM-43294 |

**Brown, Judge.**

[1] Keyno W. Thomas appeals his conviction for carrying a handgun without a license as a class A misdemeanor. Thomas raises one issue which we revise and restate as whether the trial court abused its discretion in admitting certain evidence. We affirm.

## Facts and Procedural History

[2] At approximately 1:45 a.m. on November 4, 2016, Speedway Police Officer Robby Harris observed Thomas operating a vehicle that had a license plate light that was not illuminated. Officer Harris used his computer to check the registered owner's driving status and discovered that Thomas was the registered owner and his license was suspended. Officer Harris turned on his lights in an attempt to initiate a traffic stop, and Thomas's car traveled slowly for the equivalent of about another three or four blocks.

[3] When Thomas did eventually stop, Officer Harris asked Thomas to exit the car and handcuffed him "due to the fact that [he] wasn't sure what his intentions were being that it took so long to stop." Transcript Volume II at 22. Officer Harris then patted Thomas down and did not find any weapons. He asked Thomas for his identification, and Thomas said it was in his wallet and that Officer Harris could retrieve it. Officer Harris retrieved Thomas's identification, observed a gun permit, and asked Thomas if he had a gun on him. Thomas told Officer Harris that the gun was in the center console of the vehicle.

[4]     Officer Harris and another officer were on the scene for a brief time attempting to locate Thomas's apartment so that his wife could come and retrieve the vehicle, but were unable to do so, and impounded the vehicle. Officer Harris performed an inventory search within a few minutes after placing Thomas under arrest for driving while suspended. Officer Harris found a semi-automatic handgun loaded with sixteen rounds of ammunition in the center console. After determining that the permit had expired, Thomas said he had applied for a new permit, Officer Harris had dispatch check through their record system, and dispatch informed him that Thomas had been denied his request for a lifetime handgun permit.

[5]     On November 4, 2016, the State charged Thomas with carrying a handgun without a license and driving while suspended as class A misdemeanors. On February 22, 2017, Thomas filed a motion to suppress the evidence arguing, in part, that he was in custody and that any consent given to search his vehicle was invalid given the constraints imposed upon police by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), and *Pirtle v. State*, 263 Ind. 16, 323 N.E.2d 634 (1975).

[6]     On February 28, 2017, the court held a hearing. Officer Harris testified that, when he observed the gun permit, he thought he may have missed a gun on the pat-down and asked Thomas "if he had a gun with him . . . ." Transcript Volume II at 8. Officer Harris testified that it was the policy of the Speedway Police Department to tow vehicles if there was no licensed driver at the scene and that he had brought with him the Speedway Police Department Towing

Policy, which the court admitted without objection.[1]  The following exchange then occurred:

> [Prosecutor]:  And to bring to the Courts attention, removal and towing policy from private property under paragraph H that officers are entitled to remove or impound any vehicle found upon a street, highway or roadway under the following conditions.  Per H, any vehicle that is left unattended to the removal of an arrested operator and –
>
> Q – So, Officer Harris, you followed the Speedway Towing Policy in this case?
>
> A  Yes.

*Id.* at 12.  The court took the matter under advisement.

[7]  On April 25, 2017, the court entered an order denying Thomas's motion to suppress.  The order states in part:

> 1.  That the following issues are before the Court:
>
>> a.  Whether or not questions regarding a handgun without advising [Thomas] of Miranda and the answers obtained were unlawful.
>>
>> b.  Whether or not the inventory search of [Thomas's] vehicle was unlawful.
>
> * * * * *

---

[1] The State refers to the Speedway Police Department Towing Policy as "Sup. St. Ex. 1."  Appellee's Brief at 18.  Thomas refers to the policy as State's Exhibit 1 at one point as well.  *See* Appellant's Brief at 10.  The record does not contain a copy of the policy.

6. [Thomas] argues that because he was placed in handcuffs, he was "in custody" for purposes of Federal and State Constitutional tests, and that any consent given to search a vehicle was invalid based upon: *Miranda*, *Arizona v. Gant*, 556 U.S. 332 (2009), and *Pirtle v. State*, 323 N.E.2d 634 (Ind. 1975).

7. Officer Harris did not issue *Miranda* prior to asking whether or not [Thomas] had a gun.

8. *Miranda* warnings are based upon the Fifth Amendment of the United States Constitution and require a suspect to be informed of his right to the presence and advice of counsel during a custodial interrogation by law enforcement. *Miranda* requires that officers advise a person who has been "taken into custody or otherwise deprived of his freedom of action in any significant way" that he has the right to remain silent and that any statement he makes may be used as evidence against him. *Miranda v. Arizona*, 384 U.S. 436 (1966).

9. The *Miranda* safeguards only apply when a person is subjected to a custodial interrogation. *Wright v. State*, 766 N.E.2d 1223, 1229 (Ind. Ct. App. 2002).

10. In this case, [Thomas] argues that because he was handcuffed, he was in custody for purposes of *Miranda* warnings.

11. Case law allows for an officer to make a traffic stop, to detain a person upon reasonable suspicion of criminal activity, and to ask questions to determine identity and verify or disprove the officer's suspicions. *Meredith v. State*, 906 N.E.2d 867, 873 (Ind. 2009).

12. The initial traffic stop in this case was due to a non-operational license plate light, followed by a review of the registered owner's driving status that returned "suspended". Therefore, the initial stop for the suspected criminal activity of driving with a suspended license was proper.

13. In the case of *Crabtree v. State*, 762 N.E.2d 241 (Ind. Ct. App. 2002), whereby the defendant, Crabtree, failed to comply with an officer's orders and was handcuffed as a result. *Id.* [a]t 246. The Court of Appeals determined that because the handcuffing coupled with reasonable suspicion, the officer's interaction was found to be an investigatory stop that implicated Fourth Amendment protections, and the admission of the evidence seized pursuant to the stop was not in error because the officer had reasonable suspicion that criminal activity had occurred. *Id.* [a]t 247.

14. In this case, Officer Harris, had reasonable suspicion to stop [Thomas] for investigatory purposes. Furthermore, because he disobeyed the officer's orders to pull over immediately when the officer initiated the traffic stop and continued driving for approximately three (3) blocks in a slow manner before coming to a stop, the subsequent additional seizure of placing [Thomas] in handcuffs did not rise to the level of a formal arrest. Based upon [Thomas's] behavior and suspected suspended driver's license, the officer was justified in handcuffing [Thomas] for officer safety purposes.

15. At the time Officer Harris retrieved and opened [Thomas's] wallet, at his request, he was merely investigating a driver with a suspended license. When the officer noticed the gun permit, he inquired about weapons out of concern for his safety, not an attempt to elicit a response indicative of a commission of a crime. The presence of a physical gun permit led the officer to believe that on its face it was valid and any questions about a weapon would not produce a response of an admission of additional criminal activity.

16. Per the Speedway Police Department's Tow Policy, unless a licensed driver is available to drive the vehicle upon a driver's arrest, the vehicle will be towed pursuant to policy. In this case there was no other person available to drive the vehicle subsequent to [Thomas's] arrest. The gun which [Thomas]

admitted to having was located in the passenger compartment of the vehicle and inventoried due to the tow.

17. Based on the testimony and evidence presented at the suppression hearing, the Court now DENIES the motion to suppress.

    a. The motion to suppress the officer's question regarding a handgun and the statement made by [Thomas] to the police officer regarding him having a handgun is DENIED.

    b. The motion to suppress the seizure of [Thomas's] hand gun located inside the passenger or compartment of the vehicle as a result of the tow policy is DENIED.

Appellant's Appendix Volume II at 40-44 (underlining omitted and italics added).

[8]    On July, 24, 2017, the court held a bench trial. Officer Harris testified that he noticed the gun permit in Thomas's wallet "which led me to my question for everyone's safety, do you have a gun on you?" Transcript Volume II at 22. During Officer Harris's testimony, Thomas's counsel argued that Thomas was in custody for purposes of *Miranda* and *Pirtle*. The court denied any request for suppression. Officer Harris also testified that Thomas "told me when I asked him whether he had a gun on him that the gun was in the center console of the vehicle and that's where it was." *Id.* at 27. The court admitted the gun and ammunition into evidence over Thomas's continuing objection with regard to the property and assertion that it would be fruit of the poisonous tree.

[9]     The court found Thomas guilty as charged and sentenced him to 365 days with 361 days suspended for each count and ordered that the sentences be served concurrent with each other and that the sentence for driving while suspended as a class A misdemeanor be served consecutive to his sentence under cause number 49G24-1612-F6-D4788.

### Discussion

[10]     The issue is whether the trial court erred in admitting certain evidence. Although Thomas originally challenged the admission of the evidence through a motion to suppress, he now challenges the admission of the evidence at trial. Thus, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence. *See Jefferson v. State*, 891 N.E.2d 77, 80 (Ind. Ct. App. 2008), *trans. denied*; *Lundquist v. State*, 834 N.E.2d 1061, 1067 (Ind. Ct. App. 2005).

[11]     "Because the trial court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility for abuse of discretion and reverse only if a ruling is 'clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.'" *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014) (quoting *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013)). "[T]he ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo." *Id.* Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Fox v. State*, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*.

[12] In ruling on admissibility following the denial of a motion to suppress, the trial court considers the foundational evidence presented at trial. *Carpenter*, 18 N.E.3d at 1001. If the foundational evidence at trial is not the same as that presented at the suppression hearing, the trial court must make its decision based upon trial evidence and may consider hearing evidence only if it does not conflict with trial evidence. *Guilmette v. State*, 14 N.E.3d 38, 40 n.1 (Ind. 2014).

[13] Thomas cites the Fifth Amendment of the United States Constitution as providing a privilege against self-incrimination during a custodial interrogation. He argues that "[t]he questioning of an individual as to whether they have any firearms, who received a pat down for firearms or weapons, is in restraints and has been removed from the vehicle they were the sole occupant of, is beyond the scope of officer safety and requires that *Miranda* be read." Appellant's Brief at 9-10. He asserts that his answer to Officer Harris regarding whether any handguns were on the scene must be suppressed and that any evidence uncovered after that must be suppressed as fruit of the poisonous tree. He argues that the discovery of the firearm pursuant to the Speedway Police Department Tow Policy would be an attempt to use the inevitable discovery rule to permit the introduction of the handgun at trial and that Indiana has not adopted the inevitable discovery rule. He also asserts that the extensive search

of his car does not fit within the search incident to lawful arrest as it was not needed to protect officer safety or to preserve evidence.[2]

[14] The State asserts that, as Thomas does not dispute, the initial traffic stop of Thomas's vehicle was valid. It argues that Officer Harris's question regarding where Thomas's gun was located did not implicate Thomas's rights under *Miranda* and asserts that none of Officer Harris's acts transformed the encounter into a custodial interrogation. It points out that Officer Harris did not place Thomas under arrest or inform him that he was doing so, did not ask Thomas to sit inside his patrol vehicle, transport him anywhere or otherwise restrain his freedom of movement, and did not ask Thomas any prolonged or accusatory questions seeking to elicit evidence of criminal activity. The State contends that Officer Harris's question of whether Thomas had a gun did not implicate Thomas's *Miranda* rights because Thomas was never interrogated. It asserts that the question was solely driven by the officer's concerns about safety and was not an attempt to elicit a response indicative of a commission of a crime. The State also asserts that even if Thomas was subject to custodial interrogation such that his statement about where the handgun was located must be

---

[2] In his motion to suppress, Thomas mentioned Article 1, Section 11 of the Indiana Constitution and cited *Pirtle*. In his brief on appeal, Thomas does not cite *Pirtle*, mention Article 1, Section 11, provide an independent analysis of the Indiana Constitution, or explain how his statement to Officer Harris violated his rights under the Indiana Constitution or how the search was unconstitutional under the Indiana Constitution. Failure to make a cogent argument under the Indiana Constitution constitutes waiver of the issue on appeal. *See Abel v. State*, 773 N.E.2d 276, 278 n.1 (Ind. 2002) (holding that because the defendant presented no authority or independent analysis supporting a separate standard under the state constitution, any state constitutional claim is waived).

suppressed, the admission of his statement was harmless because the handgun was found independently of his statement. The State notes that Thomas does not contest that the handgun was found in the center console of his vehicle during a proper inventory search conducted in anticipation of the vehicle being towed.

We note that Thomas does not challenge the traffic stop, his placement in handcuffs, the patdown, or Officer Harris's search of his wallet. Even assuming that Thomas was subject to custodial interrogation, we cannot say that reversal is warranted. Under the Fourth Amendment, "the inevitable discovery exception to the exclusionary rule permits the introduction of evidence that eventually would have been located had there been no error." *Shultz v. State*, 742 N.E.2d 961, 965 (Ind. Ct. App. 2001) (quotations and citations omitted), *reh'g denied*, *trans. denied*. The Indiana Supreme Court has held that the inventory search is an exception to the warrant requirement that "serves an administrative, not investigatory, purpose—because when police lawfully impound a vehicle, they must also perform an administrative inventory search to document the vehicle's contents to preserve them for the owner and protect themselves against claims of lost or stolen property." *Wilford v. State*, 50 N.E.3d 371, 374 (Ind. 2016). "Consequently, proper impoundment is the 'threshold question' to valid inventory search." *Id.* (quoting *Fair v. State*, 627 N.E.2d 427, 431 (Ind. 1993)). As with any warrantless search or seizure, the State bears the burden of proving reasonableness. *Id.*

The Court held:

> Impoundment is reasonable if it is authorized either by statute or the police's discretionary community-caretaking function. [*Fair*, 627 N.E.2d at 431-432]. Impoundment pursuant to a statute is necessarily reasonable because the Legislature has deemed that citizens' privacy interests in their cars yield to State interests in those circumstances, making police inventorying a necessary collateral administrative function. Discretionary impoundment, by contrast, is an exercise of the police community-caretaking function in order to protect the car and community from hazards. Discretionary impoundments, too, may be reasonable—but as we recognized in *Fair*, and more recently in *Taylor* [*v. State*, 842 N.E.2d 327 (Ind. 2006)], they are vulnerable to constitutional reasonableness challenges because of their potential for misuse as pretext for warrantless investigative searches under the guise of inventory. *See Fair*, 627 N.E.2d at 435; *Taylor*, 842 N.E.2d at 331-33. Unless the impoundment is proper, then, an inventory search is per se unreasonable and any contraband found during the search is inadmissible "poisoned fruit."

*Id.* at 375.

[17]   The State makes no claim that impoundment of Thomas's vehicle was authorized by statute. Thus, we focus on the community-caretaking function. *See Wilford*, 50 N.E.3d at 375 ("Here, we must decide whether impounding Wilford's vehicle was reasonable—and because we find no statute specifically authorizing this impoundment, we focus on the community-caretaking function.") (footnote omitted). The Indiana Supreme Court has held:

> Community safety often requires police to impound vehicles because they are abandoned and obstruct traffic, create a nuisance, or invite thieves and vandals. *See Fair*, 627 N.E.2d at 431-33. These impoundments fall under the police's "community caretaking function"—a catchall term for "the wide

range of responsibilities that police officers must discharge aside from their criminal enforcement activities." *Id.* at 431 (quoting *United States v. Rodriguez-Morales*, 929 F.2d 780, 785 (1st Cir. 1991), *cert. denied*, 502 U.S. 1030, 112 S. Ct. 868, 116 L.Ed.2d 774 (1992)). Indeed, besides enforcing criminal laws, police "aid those in distress, combat actual hazards, prevent potential hazards . . . and provide an infinite variety of services to preserve and protect community safety." *Rodriguez-Morales*, 929 F.2d at 784-85.

We have said that "police may discharge their caretaking function whenever circumstances compel it," *Fair*, 627 N.E.2d at 432, but also that a decision to impound "must be 'exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.'" *Id.* (quoting *Colorado v. Bertine*, 479 U.S. 367, 375, 107 S. Ct. 738, 93 L.Ed.2d 739 (1987)). Otherwise, community-caretaking impoundments could too readily be used "for a general rummaging in order to discover incriminating evidence" under the pretext of an administrative inventory. *Id.* at 435 (quoting *Florida v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 109 L.Ed.2d 1 (1990)).

In view of that potential for pretext, *Fair* set forth a strict two-prong standard for proving that the decision to impound a person's vehicle without a warrant was reasonable:

> (1) Consistent with objective standards of sound policing, an officer must believe the vehicle poses a threat of harm to the community or is itself imperiled; and

> (2) The officer's decision to impound adhered to established departmental routine or regulation.

*Id.* at 433. The State must satisfy both elements—so if it cannot meet one, we need not consider the other. *Taylor*, 842 N.E.2d at 333.

*Id.* at 375-376.

On appeal, Thomas makes no argument that Officer Harris did not believe, consistent with objective standards of sound policing, that his vehicle posed a threat of harm to the community or was itself imperiled. Nor does Thomas argue that Officer Harris's decision to impound the vehicle did not adhere to established departmental routine or regulation. Rather, Thomas asserts that the fact the Speedway Police Department Tow Policy "would eventually uncover the firearm would be an attempt to use the inevitable discovery rule to permit the introduction of the handgun at trial." Appellant's Brief at 10. He also asserts:

> Indiana has not adopted the inevitable discovery rule and such an argument cannot permit the State of Indiana to meet its burden "[. . .] of proving the challenged evidence had an independent source or to establish the attenuation of the initial taint or the applicability of another exception to the general rule of exclusion."

*Id.* (quoting *Herald v. State*, 511 N.E.2d 5, 8 (Ind. Ct. App. 1987), *reh'g denied*, *trans. denied*).

We acknowledge that the inevitable discovery exception has not been adopted as a matter of Indiana constitutional law. *See Ammons v. State*, 770 N.E.2d 927, 935 (Ind. Ct. App. 2002), *trans. denied*. However, as noted, Thomas does not mention Article 1, Section 11, provide an independent analysis of the Indiana Constitution, explain how his statement to Officer Harris violated his rights under the Indiana Constitution or how the search was unconstitutional under

the Indiana Constitution, and has waived any argument under the Indiana Constitution.

## *Conclusion*

[20] For the foregoing reasons, we affirm Thomas's conviction for carrying a handgun without a license as a class A misdemeanor.

[21] Affirmed.

Bailey, J., and Crone, J., concur.