ATTORNEYS FOR APPELLANT
Ruth Johnson
Suzy St. John
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
James B. Martin
Deputy Attorneys General
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court

———————————————————

No. 49S02-1602-CR-110

LAMONT WILFORD,

*Appellant,*

v.

STATE OF INDIANA,

*Appellee.*

———————————————————

Appeal from the Marion Superior Court, No. 49F07-1305-CM-035442
The Honorable Deborah Shook, Commissioner

———————————————————

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1408-CR-534

———————————————————

**February 26, 2016**

**Rush, Chief Justice.**

Both the Federal and State Constitutions protect Hoosiers' private property from unreasonable State intrusion. And so, every inquiry into a warrantless impoundment and inventory search of a vehicle—like any other warrantless search or seizure—ultimately depends on whether those measures were reasonable based on the surrounding facts.

Here, police impounded Defendant's car from a parking lot because he was arrested for driving while suspended, the registered owner (his sister) was not present, and the car's windshield and bumper were damaged. Police then began to inventory the car and found a handgun inside,

resulting in Defendant being charged with, and ultimately convicted of, carrying a handgun without a license.

Although such discretionary impounds may be permissible as part of law enforcement's community-caretaking function, they require proof of, among other things, an established departmental procedure that authorized the impoundment. Fair v. State, 627 N.E.2d 427, 433 (Ind. 1993). Here, the State presented only the officer's bare assertion that such a policy existed and that his actions were consistent with the policy—but just as in Fair, there was no evidence of the particulars of that policy. We therefore hold that the State failed to prove an established departmental procedure as Fair requires, and thus failed to prove that the impoundment was reasonable. Consequently, the search that followed was unreasonable and the handgun obtained pursuant to the invalid search was inadmissible. We accordingly reverse Defendant's handgun conviction.

**Facts and Procedural History**

While driving through northwest Indianapolis, Lamont Wilford, Jr. was pulled over by Officer Eli Raisovich of the Indianapolis Metropolitan Police Department ("IMPD") because the vehicle exhibited "multiple equipment problems"—namely, a damaged rear end, a broken tail light, and a cracked windshield. The car Wilford was driving belonged to his sister, who had lent it to Wilford's father, who had, in turn, lent it to him shortly before the traffic stop. Wilford pulled into the parking lot of a Planet Fitness gym, stopped the car, and produced an Indiana identification card.

Upon learning Wilford's license was suspended, Officer Raisovich (who was accompanied by a TV news film crew and on-air personality) radioed for backup, handcuffed Wilford, and placed him in the rear of a police cruiser. The officer then decided to impound the car "because of the unsafe condition of it and the fact that . . . Wilford was being arrested and he was not the owner of the vehicle." He further explained, "[W]ith our procedures in that situation, we towed the vehicle." Prior to towing, police searched the vehicle and found a handgun, which Wilford was not licensed to carry. The record does not show whether police made any effort to contact Wilford's sister to retrieve her car, nor was any inventory sheet admitted into evidence.

At a bench trial, the court admitted the handgun over Wilford's objections and convicted him of carrying a handgun without a license and driving while suspended with a prior suspension—both

2

as Class A misdemeanors. He was sentenced to 365 days, with 357 days suspended to probation, and a $100.00 fine. The Court of Appeals affirmed, holding the impoundment and inventory search satisfied Fair's requirements because the damaged, unsafe car posed a threat to the community or itself and the testimony from the impounding officer (a twenty-three-year IMPD veteran) sufficed as evidence of departmental procedures. Wilford v. State, 31 N.E.3d 1023, 1031–32 (Ind. Ct. App. 2015). We now grant transfer, thus vacating the Court of Appeals opinion, Ind. Appellate Rule 58(A)(2), and reverse Wilford's handgun conviction.

## Standard of Review

Although Fourth Amendment and Article 1, Section 11 questions require independent analyses, their answers turn on the same factor—reasonableness. The State bears the burden of proving warrantless impoundments and inventory searches are reasonable under both the Fourth Amendment and Article 1, Section 11. Fair, 627 N.E.2d at 431 (Fourth Amendment); Taylor v. State, 842 N.E.2d 327, 334 (Ind. 2006) (Article 1, Section 11). Our evaluation requires that "we examine the evidence favorable to the trial court's decision, with all disputes resolved in favor of the ruling," and also consider "any uncontested evidence favorable to the appellant." Fair, 627 N.E.2d at 434. And we will overturn the trial court's factual findings only if they are clearly erroneous. Id. But the ultimate determination of "reasonableness" is a constitutional legal question meriting independent consideration by this Court. Id.

## Discussion and Decision

### I. Vehicle Impoundment, Like Any Seizure of Property, Must Be Reasonable.

Both the Fourth Amendment and Article 1, Section 11 protect "[t]he right of the people to be secure in their persons, houses, papers, and effects" against unreasonable searches and seizures. U.S. CONST. amend. IV; IND. CONST. art. 1, § 11. Automobiles are among the "effects" protected by these provisions. Brown v. State, 653 N.E.2d 77, 79, 81 (Ind. 1995). Thus, when police impound a vehicle and inventory its contents, they effect a search and seizure, and both measures must be reasonable—that is, executed under a valid warrant or a recognized exception to the warrant requirement. Taylor, 842 N.E.2d at 330.

3

The inventory search is one such exception since it serves an administrative, not investigatory, purpose—because when police lawfully impound a vehicle, they must also perform an administrative inventory search to document the vehicle's contents to preserve them for the owner and protect themselves against claims of lost or stolen property. Id. at 330–31. Consequently, proper impoundment is the "threshold question" to valid inventory search. Fair, 627 N.E.2d at 431. Nevertheless, as with any warrantless search or seizure, the State bears the burden of proving reasonableness, id. at 430, and that is where our analysis begins.

Impoundment is reasonable if it is authorized either by statute or the police's discretionary community-caretaking function. Id. at 431–32. Impoundment pursuant to a statute is necessarily reasonable because the Legislature has deemed that citizens' privacy interests in their cars yield to State interests in those circumstances, making police inventorying a necessary collateral administrative function. Discretionary impoundment, by contrast, is an exercise of the police community-caretaking function in order to protect the car and community from hazards. Discretionary impoundments, too, may be reasonable—but as we recognized in Fair, and more recently in Taylor, they are vulnerable to constitutional reasonableness challenges because of their potential for misuse as pretext for warrantless investigative searches under the guise of inventory. See Fair, 627 N.E.2d at 435; Taylor, 842 N.E.2d at 331–33. Unless the impoundment is proper, then, an inventory search is per se unreasonable and any contraband found during the search is inadmissible "poisoned fruit."

Here, we must decide whether impounding Wilford's vehicle was reasonable—and because we find no statute specifically authorizing this impoundment,[1] we focus on the community-caretaking function.

## II. Impounding a Vehicle Under the Community-Caretaking Function Requires Proof of an Established Routine or Regulation Authorizing the Impound.

Community safety often requires police to impound vehicles because they are abandoned and obstruct traffic, create a nuisance, or invite thieves and vandals. See Fair, 627 N.E.2d at 431–33.

---

[1] The State argues in passing that this impound was authorized by Indiana Code section 9-21-7-1 (2010 Repl.), which prohibits operation of an unsafe vehicle. But the State's reliance is misplaced, because that statute does not confer any specific impoundment authority in case of violations. The State also argues that impound was required under Indiana Code section 9-22-1-5 (Supp. 2013) because Wilford did not own the car and could not "establish [his] right to possession of" it. We disagree, because nothing in the record suggests that police ever doubted that Wilford's possession was authorized.

4

These impoundments fall under the police's "community caretaking function"—a catchall term for "the wide range of responsibilities that police officers must discharge aside from their criminal enforcement activities." Id. at 431 (quoting United States v. Rodriguez-Morales, 929 F.2d 780, 785 (1st Cir. 1991), cert. denied, 502 U.S. 1030 (1992)). Indeed, besides enforcing criminal laws, police "aid those in distress, combat actual hazards, prevent potential hazards . . . and provide an infinite variety of services to preserve and protect community safety." Rodriguez-Morales, 929 F.2d at 784–85.

We have said that "police may discharge their caretaking function whenever circumstances compel it," Fair, 627 N.E.2d at 432, but also that a decision to impound "must be 'exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.'" Id. (quoting Colorado v. Bertine, 479 U.S. 367, 375 (1987)). Otherwise, community-caretaking impounds could too readily be used "for a general rummaging in order to discover incriminating evidence" under the pretext of an administrative inventory. Id. at 435 (quoting Florida v. Wells, 495 U.S. 1, 4 (1990)).

In view of that potential for pretext, Fair set forth a strict two-prong standard for proving that the decision to impound a person's vehicle without a warrant was reasonable:

> (1) Consistent with objective standards of sound policing, an officer must believe the vehicle poses a threat of harm to the community or is itself imperiled; *and*
>
> (2) The officer's decision to impound adhered to established departmental routine or regulation.

Id. at 433. The State must satisfy both elements—so if it cannot meet one, we need not consider the other. Taylor, 842 N.E.2d at 333. Here, we focus solely on Fair's second prong, which we find dispositive: whether the State proved that Officer Raisovich's decision to impound Wilford's car was consistent with an established IMPD policy or practice.

We have held impounds to be unreasonable under similar circumstances in Fair and its progeny. In Fair, police arrested the defendant for public intoxication and decided to impound his car, even though it was legally parked on private property and did not impede traffic. We held the impound and subsequent inventory unreasonable because, in "the absence of evidence about any departmental procedures," we could not discern whether impound was a legitimate discretionary impound under the community-caretaking function or mere pretext for an investigatory

search. <u>Fair</u>, 627 N.E.2d at 435. Likewise in <u>Taylor</u>, we applied <u>Fair</u> and held impoundment and inventory unreasonable because the car was safely parked on private property, the property owner did not request its removal, and the record suggested pretext. <u>Taylor</u>, 842 N.E.2d at 331–33. There we said that "it is not true that every vehicle parked illegally must be impounded" if there is no evidence it poses a safety hazard or nuisance. <u>Id.</u> at 331. And in <u>Gibson v. State</u>, police arrested the defendant for a low-level offense and impounded a car "neatly parked in a relatively secure private parking [lot], a convenience store." 733 N.E.2d 945, 957 (Ind. Ct. App. 2000). Applying <u>Fair</u>, the Court of Appeals held the impoundment and inventory unreasonable because "it [was] apparent from the record" that impoundment was "nothing more than a pretext to search the vehicle for contraband." <u>Gibson</u>, 733 N.E.2d at 958. These cases illustrate <u>Fair</u>'s boundaries—that impound and inventory are unreasonable unless the State can show those actions were "in keeping with established departmental routine or regulation." <u>Fair</u>, 627 N.E.2d at 433.

### III. The Officer's Generalized Reference to "Our Procedures" Failed to Prove the "Particulars" of Those Procedures as <u>Fair</u> Requires.

Here, then, the question is how the State must prove such an "established departmental routine or regulation." <u>Fair</u> did not expressly state what evidence—written policies or officer testimony—would prove established policy. The State contends Officer Raisovich's testimony alone satisfied its burden of proving that impoundment was pursuant to established departmental procedure and therefore reasonable. While the State is correct that we do not require evidence of written procedures, we do require more than conclusory testimony from officers. Specifically, <u>Fair</u> rejected "an officer's generalized assertion" as adequate evidence of established procedures because such evidence could not eliminate pretextual impoundment and inventory. <u>Id.</u> at 435. But we see no reason why, in lieu of a written policy, specific officer testimony cannot also demonstrate established departmental routine or regulation.

That conclusion is consistent with the vast majority of other jurisdictions that have considered the question. At least nineteen states do not require proof of a written departmental policy

6

for impoundment or inventorying, but rather will allow officer testimony to show established departmental routine or regulation.[2] Only Massachusetts specifically requires the prosecution to introduce the written policy justifying a community-caretaking impoundment and inventory. Commonwealth v. Bishop, 523 N.E.2d 779, 780 (Mass. 1988). This case law distills to a simple principle we implicitly recognized in Fair and explicitly reiterate today—while written policies are not necessary to show established departmental routine or regulation, "absent such [a] writing the burden is on the department through the testimony of its officers to show that there is a 'standardized impoundment procedure.'" 3 Wayne R. LaFave, Search & Seizure § 7.3(c), at 825–26 (5th ed. 2012); see also Fair, 627 N.E.2d at 432–33.

Officer testimony provides adequate evidence of departmental impound policy if it outlines the department's standard impound procedure and specifically describes how the decision to impound adhered to departmental policy or procedure—as opposed to "an officer's generalized assertion" as Fair held insufficient. Here, Officer Raisovich's testimony provided several reasons why he decided to tow Wilford's car, but he failed to specify how his decision conformed to an established departmental impound policy:

Q. Tell me why this vehicle was being inventoried?

A. Uh, because it was being towed because of the unsafe condition of it and the fact that uh, that Mr., uh, uh, Wilford was being arrested and he was not the owner of the vehicle.

\* \* \*

Q. Tell me, yeah, tell me again?

A. The condition of the vehicle. I don't believe it was safe to operate on the street because there was uh, you know, danger from the rear window breaks

---

[2] See Ex parte Boyd, 542 So. 2d 1276, 1282 (Ala. 1989); Benson v. State, 30 S.W.3d 731, 733 (Ark. 2000); People v. Shafrir, 107 Cal. Rptr. 3d 721, 728–29 (Cal. Ct. App. 2010); People v. Gee, 33 P.3d 1252, 1256–57 (Colo. App. 2001); State v. Nelson, 555 A.2d 426, 434 (Conn. App. Ct. 1989); People v. Gipson, 786 N.E.2d 540, 546 (Ill. 2003); State v. Huisman, 544 N.W.2d 433, 437 (Iowa 1996); State v. Oram, 266 P.3d 1227, 1239 (Kan. Ct. App. 2011); State v. Bickford, 582 A.2d 250, 252 (Me. 1990); O'Connell v. State, 933 So. 2d 306 (Miss. Ct. App. 2005); State v. Filkin, 494 N.W.2d 544, 550 (Neb. 1993); In re Jeff M., 977 P.2d 352, 354 (N.M. Ct. App. 1999); People v. Walker, 980 N.E.2d 937, 940 (N.Y. 2012); State v. O'Neill, 29 N.E.3d 365, 375 (Ohio Ct. App. 2015); Wilson v. State, 871 P.2d 46, 50–51 (Okla. Crim. App. 1994); Mayberry v. State, 830 S.W.2d 176, 181 (Tex. Crim. App. 1992); State v. Strickling, 844 P.2d 979, 989–90 (Utah Ct. App. 1992); State v. Weide, 455 N.W.2d 899, 905 (Wis. 1990); Perry v. State, 927 P.2d 1158, 1165 (Wyo. 1996).

and like I said being in a rear end collision uh, the totality of the thing, he didn't own the vehicle uh, he was being placed under arrest. So uh, with our procedures in that situation, we towed the vehicle.

Simply put, that passing reference to "our procedures in that situation" fails to "provide[] the particulars of the policy" as Fair requires. 627 N.E.2d at 436. On this record, we know literally nothing about the substance of the "procedures" the officer referenced, let alone how his actions adhered to those procedures. Without these "particulars," then, we cannot evaluate whether this impoundment was a reasonable exercise of the community-caretaking function and not merely pretext for an inventory search. In sum, absent more detail, Officer Raisovich's testimony provided inadequate evidence of established departmental routine or regulation, making impoundment un-reasonable under Fair's second prong and rendering the handgun found during the subsequent inventory search inadmissible "poisoned fruit."

Our conclusion that this impoundment was unreasonable applies under the Indiana Consti-tution as well. Article 1, Section 11 involves independent analysis, requiring this Court to determine whether impoundment and inventory are reasonable under the totality of the circumstances. Taylor, 842 N.E.2d at 334. For the same reasons we outline above, we find the absence of established departmental policies made impounding Wilford's vehicle unreasonable under the totality of the circumstances and renders the attendant inventory search invalid.

## Conclusion

We reiterate our holding in Fair—impoundment under the community-caretaking function is reasonable only pursuant to established police routine or regulations, and generalized assertions about such a policy are inadequate to make that showing. Since the State failed to prove an established police routine or regulation supporting impoundment under these circumstances, the impoundment and subsequent inventory were unreasonable. We therefore reverse Wilford's conviction for carrying a handgun without a license.

Dickson, Rucker, David, Massa, JJ., concur.

8