## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 14 2017, 9:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Bellin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Melvin Levy, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | November 14, 2017 <br><br> Court of Appeals Case No. 20A04-1705-CR-1206 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable Stephen R. Bowers, Judge <br><br> Trial Court Cause No. 20D02-1508-F4-46 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Melvin Levy appeals his convictions for unlawful possession of a firearm by a serious violent felon and possession of marijuana. He argues that the search that led to the discovery of the gun and the marijuana violated the Fourth Amendment to the U.S. Constitution. We agree and reverse Levy's convictions.

# Facts and Procedural History

[2] On the afternoon of August 21, 2015, Corporal Brandon Roundtree and Corporal Jason Gruber of the Elkhart Police Department were together in a squad car in Elkhart, "watching cars" at an intersection. Tr. p. 11. They saw an SUV with darkly tinted windows and, "being proactive," decided to follow it. *Id*. at 12. The driver of the SUV, later identified as Levy, pulled up to a stop sign, activated his right-turn signal, and turned right. Corporal Roundtree immediately initiated a traffic stop because Levy did not signal for at least 200 feet before the turn (as required by Indiana Code section 9-21-8-25). A video of the stop shows that Levy parked the SUV in front of some buildings on Indiana Avenue, in a parking lane separated from the driving lane by a solid white line.

[3] When the officers approached Levy, he informed them that he did not have insurance. The officers decided to have the SUV impounded. While waiting for a tow truck, Corporal Roundtree searched the SUV, and he found a revolver under the driver's seat. Because Levy did not have a license to carry a

handgun, and none of the exceptions to the license requirement applied, *see* Ind. Code § 35-47-2-1, the officers placed him under arrest. Corporal Gruber then searched Levy and found two bags of marijuana.

[4] After the arrest, the State determined that Levy had been convicted of dealing in cocaine in 2008 and charged him with unlawful possession of a firearm by a serious violent felon (dealing in cocaine being a "serious violent felony" under the controlling statute, *see* Ind. Code § 35-47-4-5), as well as possession of marijuana (elevated from a Class B misdemeanor to a Class A misdemeanor based on the same cocaine-dealing conviction). Levy filed a motion to suppress the gun and the marijuana, claiming that the searches of him and his SUV were done "without a warrant, consent by the Defendant or probable cause that a crime had been committed that would have justified a warrantless search of the person and property of the Defendant" and that the searches therefore violated the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution. Appellant's App. Vol. II pp. 66-67.

[5] In its written response to Levy's motion, the State asserted that no warrant was required for the search of the SUV because it was merely an "inventory search"—a term used to describe the process of documenting the contents of an automobile that has been or is going to be impounded. The State cited *Wilford v. State*, in which our Supreme Court explained that such warrantless searches are permissible as long as both the impoundment and the inventory are reasonable. 50 N.E.3d 371 (Ind. 2016). The State argued that the decision to impound Levy's SUV was "lawful" because he did not have insurance and that

the subsequent search was proper because "the Elkhart Police Department has a valid inventory policy, and the Officers followed their Department's inventory polic[y][.]" Appellant's App. Vol. II p. 54. The State also argued that Levy was lawfully arrested for carrying the gun without a license and that the marijuana was discovered as the result of a proper search incident to that arrest.

[6] A bench trial and a hearing on Levy's motion were scheduled to be held on the same morning, with the motion "to be heard prior to the Bench Trial." *Id.* at 63. By the scheduled day, however, the parties had agreed that the trial evidence would largely duplicate the evidence relevant to Levy's motion and that therefore all the evidence should be heard at one time. They also agreed that the outcome of the trial would turn on the court's ruling on the motion to suppress—if denied, Levy would be found guilty; if granted, Levy would be found not guilty.

[7] The State's first witness was Corporal Roundtree. When asked about the decision to impound the SUV, he initially testified, consistently with the State's written response to Levy's motion, that it was based on the fact that Levy "did not have insurance." Tr. p. 24. In a subsequent exchange with the prosecutor, however, Corporal Roundtree addressed the location and manner in which the SUV was parked:

> Q: So just to be clear uhm, a vehicle that does not have insurance, can that be driven on an Indiana roadway?
>
> A: No.

Q:      So in this case why did you decide to impound the vehicle?

Q:      The vehicle was on – the vehicle was parked on a public roadway.  Even though it was in front of the One Stop Shop uhm, you have to have permission from the owners to keep that vehicle parked.  Given the fact that it was on roadway [sic] and the parking spot was short, we had no other choice but to tow the vehicle.

*Id*. at 35.  Corporal Roundtree also testified that he is "trained on the EPD's policies and procedures for impounded a vehicle [sic]" and that when he impounds a vehicle he does so "pursuant to an EPD policy[.]"  *Id*. at 24.  Neither Corporal Roundtree nor Corporal Gruber provided any additional testimony about an Elkhart Police Department policy on the impoundment of vehicles.

[8]     A month later, the trial court issued an order agreeing with the State that the warrantless search of Levy's SUV was a valid inventory search.  The court concluded that the decision to impound was proper, though not on the grounds stated by Corporal Roundtree (lack of insurance and inconvenience to nearby businesses).  Instead, the court found that Levy parked his SUV "at a distance from the curb that created a potential hazard."  Appellant's App. Vol. II p. 47.  The court also concluded that the subsequent search of the SUV was reasonable.  Accordingly, the court denied Levy's motion to suppress and found him guilty as charged.

[9]     Levy now appeals.

# Discussion and Decision

[10] Levy contends that the search of his SUV was not a valid inventory search under the Fourth Amendment and that the trial court therefore erred by admitting the gun and the marijuana into evidence.[1] Because the facts relevant to this issue are undisputed, we review the matter de novo. *Kelly v. State*, 997 N.E.2d 1045, 1050 (Ind. 2013) ("The constitutionality of a search or seizure is a question of law, and we review it de novo.").

[11] Before considering Levy's argument, we need to address the State's claim that he waived the argument by failing to object when the State moved to introduce the gun and the marijuana into evidence. In making this claim, the State actually relies in part on Levy's appellate attorney, who noted in her brief that "counsel for the Defendant did not object to any of the evidence submitted by the State, as required to do in order to properly preserve a suppression issue for appeal." Appellant's Br. p. 7 n.1. In fact, Levy's appellate attorney goes so far as to suggest that Levy may have an ineffective-assistance-of-counsel claim against his trial attorney. *See id.* at 10 n.2.

[12] We are troubled by this mutual mischaracterization of the record. In the trial court, it was abundantly clear to all involved—judge, prosecutor, defense

---

[1] Levy also argues that using his 2008 cocaine-dealing conviction as the basis for the unlawful possession of a firearm by a serious violent felon conviction and as the basis for elevating the marijuana charge from a Class B misdemeanor to a Class A misdemeanor constitutes an impermissible "double enhancement." Because we reverse his convictions on Fourth Amendment grounds, we need not reach that issue.

counsel—that Levy objected to the admission of the gun and the marijuana. In fact, Levy's challenge to the impoundment and subsequent search was his only defense. This is why the parties agreed to a bench trial and then agreed that the trial should be held in conjunction with the suppression hearing. *See* Tr. p. 4 (judge noting parties' agreement that he "would hear all the evidence at one time and make a decision with respect to the Motion to Suppress Evidence"). Levy's attorney confirmed the reason for the combined trial/hearing in the first line of his opening statement, when he said, "[W]hy we are here contesting this case – is not so much contesting elements of the underlying crime, but the actual stop and the search of the vehicle." *Id*. at 6. In this sense, the entire proceeding served as one long objection by Levy. Because that was the shared understanding of the participants, there was no need for Levy to voice additional objections when the gun and the marijuana were introduced. We therefore turn to the merits of Levy's argument.

[13] The outcome of this appeal is controlled by our Supreme Court's decision in *Wilford*, the impoundment case the State mentioned in its response to Levy's motion to suppress. The *Wilford* Court began its analysis by alluding to three basic principles: (1) the Fourth Amendment prohibits "unreasonable" searches of private property, (2) a search, to be considered reasonable, generally must be authorized by a valid warrant, and (3) a warrantless search is reasonable only if it falls within a recognized exception to the warrant requirement. 50 N.E.3d at 374. When the State seeks to rely on evidence obtained during a warrantless search, and the defendant objects, the State bears the burden of proving the

applicability of an exception. *Id.* One such exception, the Court explained, is the inventory search, "since it serves an administrative, not investigatory, purpose—because when police lawfully impound a vehicle, they must also perform an administrative inventory search to document the vehicle's contents to preserve them for the owner and protect themselves against claims of lost or stolen property." *Id.* As we noted earlier, for this exception to apply, the State must show that both the decision to impound and the search itself were reasonable. *Id.*

[14] Here, Levy does not dispute the reasonableness of the search itself; he challenges only the initial decision to impound his SUV.[2] In *Wilford*, the Court explained that law enforcement officers enjoy some measure of discretion in deciding whether to have a vehicle impounded "in order to protect the car and community from hazards" (as part of the so-called "community-caretaking function") but that such decisions "are vulnerable to constitutional reasonableness challenges because of their potential for misuse as pretext for warrantless investigative searches under the guise of inventory." *Id.* at 375. Given the potential for pretext, the State must satisfy the "strict two-prong standard" set forth in *Fair v. State*, 627 N.E.2d 427 (Ind. 1993), specifically, that (1) the impounding officer believed, consistent with objective standards of sound policing, that the vehicle posed a threat of harm to the community or

---

[2] For this reason, the State's reliance on *Weathers v. State*, 61 N.E.3d 279 (Ind. Ct. App. 2016), is misplaced. In that case, the defendant challenged the search but not the decision to impound. *See id.* at 285 ("Weathers does not . . . contest Deputy Andre's decision to impound the vehicle.").

was itself imperiled and (2) the officer's decision to impound "adhered to established departmental routine or regulation." *Wilford*, 50 N.E.3d at 375-76. If the State fails to satisfy either element, the impoundment and inventory search will be declared unreasonable, and any contraband found during the search is inadmissible "poisoned fruit." *Id*. at 375.

[15] Applying this standard to the facts before it, the *Wilford* Court skipped over the threat-of-harm prong of *Fair* and went straight to the impoundment-policy prong. When the officer in *Wilford* was asked why he decided to have a car impounded, he testified that it was damaged, that the driver was being arrested for driving with a suspended license, and that the driver was not the owner of the car. He then added, "[W]ith our procedures in that situation, we towed the vehicle." *Id*. at 377. The State did not present any further evidence of the police department's alleged impoundment policy. The Court held that while officer testimony regarding an impoundment policy can suffice when there is no evidence of a written policy, such testimony is adequate only if it "outlines the department's standard impound procedure and specifically describes how the decision to impound adhered to departmental policy or procedure[.]" *Id*. at 376-77. The Court concluded that an officer's passing reference to "our procedures in that situation" does not satisfy that standard. The Court explained:

> On this record, we know literally nothing about the substance of the "procedures" the officer referenced, let alone how his actions adhered to those procedures. Without these "particulars," then, we cannot evaluate whether this impoundment was a reasonable

exercise of the community-caretaking function and not merely pretext for an inventory search. In sum, absent more detail, [the officer's] testimony provided inadequate evidence of established departmental routine or regulation, making impoundment unreasonable under *Fair*'s second prong and rendering the handgun found during the subsequent inventory search inadmissible "poisoned fruit."

*Id.* at 377-78.

[16] Here, the trial court found that Levy's SUV was parked "at a distance from the curb that created a potential hazard" and that impoundment was therefore proper. Notably, however, neither officer testified that the SUV was parked too far from the curb, and the video of the stop casts significant doubt on the trial court's conclusion. In any event, even if we were to hold that the trial court got it right on *Fair*'s threat-of-harm prong, the court made no mention of the impoundment-policy prong, and the State's evidence on that issue is woefully inadequate. The State did not present any evidence of a written policy.[3] Moreover, Corporal Roundtree testified only that he is "trained on the EPD's policies and procedures for impounded a vehicle [sic]" and that he impounds vehicles "pursuant to an EPD policy[.]" Tr. p. 24. We see little difference between this testimony and the testimony found insufficient in *Wilford*.

---

[3] The State introduced a copy of the Elkhart Police Department's policy on the "Inventory of Impounded Vehicles," *see* Ex. 4 p. 10, but that policy simply says that "lawfully impounded" vehicles must be inventoried and describes how inventories are to be conducted. The policy does not provide any guidance as to when impoundment is "lawful," and the State makes no argument that it constitutes an "impoundment policy" for purposes of *Fair* and *Wilford*.

Corporal Roundtree neither outlined a standard impound procedure for his department nor specifically described how his decision to impound Levy's SUV adhered to any such procedure.

[17]     In an attempt to explain the lack of evidence of an impoundment policy, the State notes that Levy did not specifically "raise an objection to the officer[s'] decision to impound the vehicle before or during the officer[s'] testimony." Appellee's Br. p. 9. The State asserts, "If Levy had raised an objection to the officer's decision to impound, while the officer was testifying, it is possible that additional evidence could have been offered concerning the Elkhart Police Department policy the officer referred to regarding the decision to impound a vehicle[.]" *Id.* at n.1. We see two problems with the State's position.

[18]     First, as with any exception to the warrant requirement, the burden was on the State to prove the applicability of the inventory-search exception. *See Wilford*, 50 N.E.3d at 374. That includes the burden of showing that the decision to impound was reasonable. *Id.* The State took on this burden the moment it decided to rely on the inventory-search exception; no objection by Levy, beyond his motion to suppress, was necessary.

[19]     Second, the suggestion that the State did not think the reasonableness of the impoundment was at issue is belied by the record. The prosecutor spent the bulk of his closing argument trying to convince the judge that the decision to impound Levy's SUV was reasonable. He spoke at length about *Wilford*, which deals solely with the reasonableness of impoundments. When the judge pressed

the prosecutor about the decision to impound the SUV—"Is there any evidence that this was anything other than a public street where anyone could park for whatever length of time they wanted?" Tr. p. 82—the prosecutor did not argue that Levy had waived any objection to the reasonableness of the impoundment, nor did the prosecutor ask the court for an opportunity to present additional evidence about an impoundment policy. Likewise, the prosecutor did not object when Levy's attorney attacked the reasonableness of the impoundment during his closing argument. The prosecutor clearly believed that Levy was challenging the decision to impound, and he therefore had every incentive to present evidence about the purported impoundment policy.[4]

[20] Levy's failure to specifically object to the reasonableness of the impoundment did not relieve the State of its burden on that issue. And given the lack of evidence that the decision to impound adhered to established department routine or regulation, the subsequent inventory search was necessarily unreasonable under the Fourth Amendment.[5] Therefore, the gun and the

---

[4] The State also notes the following passage from the opening statement of Levy's attorney: "What happens after the stop? Mr. Levy is very honest, he says, look I don't have any insurance on this vehicle. We understand at that point the car uh, the car could have been impounded." Tr. p. 7. While the State would have been justified in treating this language as a concession that the impoundment was reasonable, there is no indication that it actually did so. If the State truly believed that Levy had conceded the issue, surely it would have begun its closing argument by saying so. Instead, as just described, the State (and the judge) proceeded as if the reasonableness of the impoundment was still very much in dispute.

[5] Levy argues that the search was also unreasonable under Article 1, Section 11 of the Indiana Constitution. We agree. *See Wilford*, 50 N.E.3d at 378 ("Our conclusion that this impoundment was unreasonable applies under the Indiana Constitution as well.").

marijuana are inadmissible, and we must reverse Levy's convictions.[6]  We remand this matter to the trial court, where, presumably, the State will dismiss the charges against Levy.  *See* Tr. p. 97 (trial court explaining that "I think we're all in agreement that if the Court grants the Motion to Suppress evidence the case is over.").

[21]    Reversed and remanded.

Mathias, J., and Crone, J., concur.

---

[6] While the marijuana was not found during the search of the SUV, but rather during a search incident to arrest, that arrest was the direct result of the search of the SUV.  As such, the marijuana is no more admissible than the gun.  The State does not argue otherwise.