FILED

Dec 14 2018, 9:04 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Daniel J. Vanderpool
Warsaw, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert H. Smith,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 14, 2018

Court of Appeals Case No.
85A05-1712-CR-2908

Appeal from the Wabash Circuit
Court

The Honorable Robert R.
McCallen III, Judge

Trial Court Cause No.
85C01-1608-F4-925

**Tavitas, Judge.**

## Case Summary

[1] Robert Smith appeals his convictions for operating a motor vehicle while

privileges are forfeited for life, a Level 5 felony; possession of

methamphetamine, a Level 4 felony; illegal possession of a hypodermic syringe,

a Level 6 felony; carrying a handgun without a license, a Level 5 felony, and his status as a habitual offender.[1] We affirm.

## Issues

Smith raises two issues, which we restate as:

> I.  Whether the trial court properly admitted evidence of a handgun found during a search of the vehicle Smith was driving.
>
> II.  Whether the trial court properly admitted evidence of Smith's prior acts.

## Facts

On August 16, 2016, Smith and Jerry Glenn entered the apartment of Amanda Snow and Johnny Gillum in Wabash while Snow and Gillum were in bed. Smith was previously granted access to the apartment and had a key. Smith had stored some personal items at the apartment. At an earlier time, however, when Snow and Gillum were in jail, someone stole items from the apartment.

Smith became upset because he could not find his father's coat. Smith told Gillum that if he could not find the coat, "he would shoot [Gillum] right on the spot." Tr. Vol. II p. 63. Gillum had seen Smith with a pink gun fifteen days earlier, and Gillum took this threat seriously even though he did not see Smith

---

[1] We held oral argument in this case at Indiana University South Bend on November 27, 2018. We thank counsel for their presentations and Indiana University South Bend and the American Democracy Project for their hospitality.

with a gun that evening. Smith found the coat but started to go to the garage to look for his other items. Gillum "knew that some of [Smith's] stuff was missing at that point" and was worried. *Id*. at 64.

[5] On his way to the garage, Smith asked Gillum if Gillum could get some heroin. Gillum saw this as an opportunity to get away from Smith. Gillum feigned a call to his dealer and told Smith the dealer would meet Smith at a gas station nearby. Smith and Glenn left the apartment to go to the gas station.

[6] After Smith and Glenn left, Gillum and Snow immediately left the apartment and started walking away. A friend saw them and took them to Wal-Mart. At Wal-Mart, Snow used a store phone[2] and contacted the police to report the threats made by Smith against Gillum. Snow told the dispatcher what Smith was driving and where Gillum had told Smith and Glenn to wait. Snow and Gillum waited at Wal-Mart to speak to law enforcement.

[7] Officer Phillip Mickelson of the Wabash Police Department received a dispatch that Smith had threatened to shoot someone and that Smith would be at the gas station. Officer Mickelson went to the gas station and located the vehicle Snow had reported Smith was driving. The vehicle was located in a parking spot in the gas station's small parking lot.[3] Officer Mickelson confirmed there were

---

[2] Gillum explained his cell phone only worked on Wi-Fi, and he and Snow wanted to leave the apartment before Smith could return. They went to a "public setting [because they] just felt safe and it seemed right to go there." Tr. Vol. II p. 68.

[3] State's Exhibit 1, which is an aerial photograph of the gas station, shows approximately ten to twelve parking spots.

two people in the vehicle. As he parked, Officer Mickelson observed the driver in the vehicle "reach towards the . . . passenger side, back seat area[.]" *Id*. at 84. As he approached the vehicle, Officer Mickelson recognized the person in the driver's seat to be Smith, and he knew Smith was a habitual traffic violator.

[8] Officer Andrew Johnson of the Wabash Police Department arrived at the scene and approached the vehicle from the passenger side. Officer Mickelson informed Glenn and Smith of the allegations that Smith had threatened someone, but Glenn and Smith "advised they ha[d] no idea what [Officer Mickelson was] talking about." *Id*. at 85. Glenn and Smith said they were at the gas station waiting for a friend. With respect to the vehicle they were in, Smith and Glenn said the car was owned by "a buddy," and later said that they were "buying it from a friend." *Id.* at 85, 106. The men, however, could not name the owner of the vehicle.[4]

[9] Deputy George Ryan Short of the Wabash County Sheriff's Department also arrived at the scene. Deputy Short went inside the gas station and viewed the security camera footage. The footage showed Smith driving the vehicle. Deputy Short showed the footage to Officer Mickelson. Officer Mickelson proceeded to arrest Smith for operating a motor vehicle while privileges are

---

[4] The owner of the vehicle was Brittney Saylor of Peru, Indiana. Smith stipulated to this fact at the hearing on his motion to suppress. Suppression Hearing Tr. Vol. II p. 24.

forfeited for life. When Officer Mickelson searched Smith's person, incident to the arrest, he found a bag of methamphetamine and a syringe.

[10] Officer Johnson asked Glenn to exit the vehicle, and he performed a pat down search. The pat down search did not reveal any illegal items. Because Glenn's license was suspended, however, Glenn was not allowed to drive the vehicle. Glenn was released and walked away.

[11] Officer Mickelson decided to have the vehicle impounded because (1) the owner of the vehicle was not there; (2) the vehicle was parked in the gas station parking lot; (3) the backseat of the vehicle was full of items that needed to be inventoried; and (4) neither Smith nor Glenn was a licensed driver. Officers completed an inventory search. During the search of the vehicle, officers found a loaded black .38 caliber revolver on the backseat passenger floorboard.

[12] On August 17, 2016, the State charged Smith with Count I, operating a motor vehicle while privileges are forfeited for life, a Level 5 felony; Count II, possession of methamphetamine, a Level 4 felony; Count III, illegal possession of a hypodermic syringe, a Level 6 felony; Count IV, carrying a handgun without a license, a Class A misdemeanor; and Count V, carrying a handgun without a license, a Level 5 felony. The State also alleged Smith was a habitual offender.

[13] On May 19, 2017, Smith filed a motion to suppress the handgun and alleged the officers had performed an "unlawful inventory search" under both the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution. Appellant's

App. Vol. II p. 112. After a hearing on the motion to suppress, the trial court denied the motion to suppress.

[14] On October 3, 2017, the State filed a notice of "404(b) Evidence" because it intended to have Gillum testify that he had "observed [Smith] pull a gun on another individual" on a prior occasion. *Id*. at 122. Smith filed a motion in limine regarding the evidence. During the hearing immediately prior to trial, the State clarified it intended "to present evidence that fifteen days before he – Johnny Gillum saw [Smith] in possession of a firearm, and then on this particular occasion [Smith was] threatening Johnny Gillum, to shoot Johnny Gillum, and that's what led [Snow and Gillum] to call the police." Tr. Vol. II p. 23.

[15] The trial court found that the evidence of Smith's possession of a gun fifteen days earlier and Smith's threat to shoot Gillum on the day of the incident was admissible evidence. The trial court then stated:

> And so I'll show that, without making an objection, unless you feel it's necessary on the record, I'm going to show you've made that objection for the record. I think that issue is preserved for the record in fairness to your client. But the Court of Appeals, if necessary, would have the full authority to consider you made that objection timely when it was offered.

*Id.* at 33.

[16] At the jury trial, Smith did not object to Gillum's testimony regarding Smith's possession of the gun fifteen days before the incident or to Gillum's testimony

regarding the threats on the day of the incident. Smith did object to the admission of evidence found as a result of the inventory search, and the trial court overruled the objection.

[17] The jury found Smith guilty of Counts I through IV. Smith then waived his right to a jury trial regarding Count V and the habitual offender allegation. The trial court found Smith guilty of Count V and found that Smith is a habitual offender. The habitual offender enhancement was applied to Count II, the methamphetamine possession charge. The trial court merged Count IV, carrying a handgun without a license, a Class A misdemeanor, with Count V, carrying a handgun without a license, a Level 5 felony. The trial court sentenced Smith to an aggregate sentence of twenty-five years in the Department of Correction.

## Analysis

### I. Admission of Handgun

[18] Smith argues that the trial court erred by denying his motion to suppress and by admitting the handgun at trial. According to Smith, the admission of the handgun violated both the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution. Because Smith appeals from a completed jury trial, the issue is more appropriately framed as whether the trial court properly admitted the evidence at trial. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). "The general admission of evidence at trial is a matter we leave to the discretion of the trial court." *Id.* at 259-60. "We review these determinations for abuse of

that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Id.* at 260.

### A. Fourth Amendment

[19] The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures by prohibiting them without a warrant supported by probable cause. U.S. Const. amend. IV. "The fundamental purpose of the Fourth Amendment to the United States Constitution is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings." *Taylor v. State*, 842 N.E.2d 327, 330 (Ind. 2006). This protection has been "extended to the states through the Fourteenth Amendment." *Bradley v. State*, 54 N.E.3d 996, 999 (Ind. 2016). "As a deterrent mechanism, evidence obtained in violation of this rule is generally not admissible in a prosecution against the victim of the unlawful search or seizure absent evidence of a recognized exception." *Clark*, 994 N.E.2d at 260. "When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search." *Bradley*, 54 N.E.3d at 999.

[20] The parties addressed only the inventory search exception before the trial court. On appeal, Smith argues only that the inventory search exception does not apply. The State, however, argues on appeal that the search did not violate the Fourth Amendment because: (1) Smith did not have standing to challenge the search because he did not own the vehicle and did not prove that he had the

owner's permission to drive it; (2) the handgun was admissible under the automobile exception; and (3) the handgun was admissible under the inventory search exception. Because we conclude that the handgun was admissible under the inventory search exception, we need not address the State's other arguments.

[21] The inventory search is one exception to the Fourth Amendment's warrant requirement "since it serves an administrative, not investigatory, purpose— because when police lawfully impound a vehicle, they must also perform an administrative inventory search to document the vehicle's contents to preserve them for the owner and protect themselves against claims of lost or stolen property." *Wilford v. State*, 50 N.E.3d 371, 374 (Ind. 2016). Proper impoundment is the "threshold question" when determining the validity of an inventory search. *Id.* "Impoundment is reasonable if it is authorized either by statute or the police's discretionary community-caretaking function." *Id.* at 375.

[22] The State argues that the impoundment was statutorily authorized.[5] "Impoundment pursuant to a statute is necessarily reasonable because the Legislature has deemed that citizens' privacy interests in their cars yield to State interests in those circumstances, making police inventorying a necessary collateral administrative function." *Id.* The State relies on Indiana Code Section 9-22-1-5, which provides: "When an officer discovers a vehicle in the

[5] The State makes no argument that the discretionary community-caretaking function is applicable here.

possession of a person other than the owner of the vehicle and the person cannot establish the right to possession of the vehicle, the vehicle shall be taken to and stored in a suitable place determined by the officer."

[23] We agree that the vehicle was properly impounded under Indiana Code Section 9-22-1-5. The officers discovered Smith in possession of the vehicle, but Smith told officers that the vehicle belonged to a "buddy" and that he was "buying it from a friend." Tr. Vol. II pp. 85, 106. Smith, however, could not name the owner of the vehicle, which was registered to Brittney Saylor from Peru, Indiana. Smith could not establish the right to possess the vehicle. The officers properly impounded the vehicle and performed an inventory search. The gun, which was found during the inventory search, was properly admitted and not in violation of the Fourth Amendment.

### B. Indiana Constitution

[24] The language of Article 1, Section 11 tracks the Fourth Amendment; however, "Indiana has explicitly rejected the expectation of privacy as a test of the reasonableness of a search or seizure." *Litchfield v. State,* 824 N.E.2d 356, 359 (Ind. 2005). Instead, the legality of a search "turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Id.* Reasonableness is determined by balancing: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion imposed by the search; and (3) the extent of law enforcement needs. *Id.* at 361.

Smith does not engage in a detailed examination of the three reasonableness factors. Rather, Smith merely argues the impoundment was unreasonable because:

> The vehicle was properly parked in a marked space, at a public space, and in full view of cameras in the store. It was not a hazard to the motoring public. It was not reported stolen, nor did the police make any effort to check with the registered owner to see if it was being purchased as claimed by Smith. Although Smith was arrested, his friend was released and could easily have called someone to have the car moved.

Appellant's Br. p. 20.

The officers here had a high degree of concern, suspicion, or knowledge that a violation had occurred given Snow's 911 call; the threat to shoot Gillum; Smith's reaching toward the backseat when he saw the officer approach; and the drugs and syringe found on Smith's person when he was arrested. As for the degree of intrusion imposed by the inventory search, we conclude that the intrusion was minimal. Smith did not even own the vehicle and could not identify the owner. Finally, as for the extent of law enforcement needs, given Smith's arrest and the fact that Smith could not even name the owner of the vehicle, law enforcement had a significant need to secure the vehicle and its contents, which were located in a gas station's small parking lot. A balancing of these factors reveals that, under the totality of the circumstances, the police conduct here was reasonable. As such, the admission of the handgun, which

was discovered during the inventory search, did not violate Article 1, Section 11 of the Indiana Constitution.

## II. *Admission of Prior Acts*

Next, Smith argues that the trial court abused its discretion by admitting evidence of prior bad acts. "A trial court has broad discretion in ruling on the admissibility of evidence and we will disturb the court's rulings only where the petitioner has shown an abuse of that discretion." *Bowman v. State*, 51 N.E.3d 1174, 1180 (Ind. 2016). An abuse of discretion occurs only if a ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id.* "Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of the party." *Lewis v. State*, 34 N.E.3d 240, 248 (Ind. 2015). "To determine whether an error in the introduction of evidence affected the appellant's substantial rights, this Court must assess the probable impact of that evidence upon the jury." *Id.*

Specifically, Smith challenges the admission of Gillum's testimony regarding Smith's actions on August 1, 2016, as follows:

> Q  All right, so on or about August 1st, 2016, did you see Robbie Smith in possession of a firearm on that day?
>
> A  Yeah.
>
> Q  What kind of firearm was it?

A   I don't know anything about guns.  It was just a pink gun.

Q   Okay. Was it a rifle, shotgun, handgun?

A   It was a handgun.

Tr. Vol. II p. 58.

[29]    Smith also challenges the admission of Gillum's testimony regarding Smith's actions on August 16, 2016, the date of the incident:

Q   . . . Was [Smith] mad – did he say anything to you if he couldn't find the coat?

A   Yeah. Yeah, he did.

Q   What did he say?

A   That if his dad's coat wasn't there, that he would shoot me right on the spot.

*Id.* at 63.

[30]    Smith argues that the evidence was inadmissible under Indiana Evidence Rule 404(b).[6]  Indiana Evidence Rule 404(b) provides that "[e]vidence of a crime,

---

[6] Immediately before the trial, the trial court found that the evidence of Smith's possession of a gun fifteen days earlier and Smith's threat to shoot Gillum on the day of the incident was admissible evidence.  The trial court then stated:

And so I'll show that, without making an objection, unless you feel it's necessary on the record, I'm going to show you've made that objection for the record.  I think that issue is preserved for

wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such evidence, however, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid. R. 404(b). First, the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act. *Camm v. State*, 908 N.E.2d 215, 223 (Ind. 2009). Second, the court must determine that the proponent has sufficient proof that the person who allegedly committed the act did, in fact, commit the act. *Id.* Third, the court must "balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403." *Id.* Indiana Evidence Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."

[31] We conclude that the trial court erred by admitting evidence that Smith possessed a pink gun at an earlier date. This evidence does not meet the

---

the record in fairness to your client. But the Court of Appeals, if necessary, would have the full authority to consider you made that objection timely when it was offered.

Tr. Vol. II p. 33. Smith did not object to this evidence during the trial. At oral argument, the State conceded that this issue was preserved for appeal. We believe better practice would have been for Smith to object during trial and for the trial court to inform Smith that such objections are necessary. Given the State's concession, however, we will address this issue.

requirements of Evidence Rule 404(b), and any minimal probative value was outweighed by unfair prejudice to Smith. Despite the trial court's error, however, any error in admitting evidence regarding the pink gun and the threat to shoot Gillum was harmless. Gillum's very brief testimony that Smith possessed a pink gun on August 1, 2016, would not have had a probable impact on the jury's determination that Smith possessed a gun on August 16, 2016. The gun recovered from the vehicle on August 16, 2016 was black, and Gillum testified that he did not see a gun on August 16, 2016. Further, the State presented overwhelming evidence of Smith's guilt. Smith drove the vehicle to the gas station; he was arrested with methamphetamine and a syringe in his pocket; and he was seen reaching behind the passenger seat of the vehicle, where the black handgun was later found. The admission of the evidence at issue here did not affect Smith's substantial rights. Any error in the admission of the evidence was harmless.

## Conclusion

[32] The trial court properly admitted evidence of the handgun found in the vehicle pursuant to the inventory search. Additionally, any error in the admission of evidence of Smith's prior bad acts was harmless error. We affirm.

[33] Affirmed.

Crone, J., and Barnes, S.J., concur.