

**FILED**

Aug 07 2019, 8:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
O'Connor & Auersch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Carl Smith,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 7, 2019<br><br>Court of Appeals Case No.<br>18A-CR-3009<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Amy Jones, Judge<br><br>Trial Court Cause No.<br>49G08-1705-CM-17562 |

**Bradford, Judge.**

# Case Summary

[1]     In May of 2017, a vehicle being driven by Carl Smith was stopped by police after committing multiple traffic infractions. After it was determined that Smith's driver's license was suspended, officers decided to have the vehicle towed. Prior to being towed, officers searched Smith's vehicle and discovered a handgun, for which Smith did not have a license to carry. In October of 2018, Smith was convicted of Class A misdemeanor carrying a handgun without a license and Class A infraction driving while suspended. Smith does not contest his conviction for driving while suspended but contends that the purported inventory search was not conducted pursuant to established departmental routine or regulation, violating his rights under the Fourth Amendment of the United States Constitution. Finding his contention dispositive and agreeing with it, we affirm his conviction for driving while suspended and reverse his conviction for carrying a handgun without a license.

# Facts and Procedural History

[2]     On May 10, 2017, a vehicle being driven by Smith was pulled over by Indianapolis Metropolitan Police Officer Aaron Trotter for committing multiple traffic infractions. After Smith admitted to not having a driver's license, Officer Trotter requested Smith's name and date of birth. Smith replied that he did not have a date of birth and asked for Officer Trotter's supervisor. Once Officer Trotter's sergeant arrived, Smith was removed from the vehicle and placed in handcuffs. Officer Trotter eventually obtained a document containing Smith's

name and social security number. After identifying Smith by searching the police database, a cross-search of the Bureau of Motor Vehicles's records revealed that Smith's driver's license was suspended. While Officer Trotter began filling out paperwork to arrest Smith for driving while suspended and failure to identify, two other officers searched the vehicle, discovering a handgun in the glove box. At some point, an acquaintance of Smith arrived on scene with a valid driver's license and was permitted by the officers to drive Smith's vehicle home.

[3] On May 12, 2017, the State charged Smith with Class A misdemeanor carrying a handgun without a license, Class A misdemeanor driving while suspended, and Class C misdemeanor refusal to identify. On October 10, 2018, a bench trial was held, at which Smith moved to suppress evidence discovered during the search, claiming that the search was unconstitutional. The State solely argued that the search was a valid inventory search. The trial court denied Smith's motion and found him guilty of Class A misdemeanor carrying a handgun without a license and Class A infraction driving while suspended. The trial court sentenced Smith to 365 days with 357 days suspended to probation.

# Discussion and Decision

[4] Smith contends that the trial court erroneously admitted evidence obtained during the search of his car because said search violated his rights pursuant to the Fourth Amendment of the United States Constitution. Specifically, Smith contends that the State failed to establish that the impoundment was done

pursuant to the police department's established routine or regulation. The admission of evidence is a matter entrusted to the sound discretion of the trial court, and we will only reverse its ruling if it is clearly against the logic and effect of the facts and circumstances. *Kelly v. State*, 997 N.E.2d 1045, 1050 (Ind. 2013) (internal quotations omitted). However, we review the trial court's ruling on the constitutionality of a search or seizure *de novo*. *Campos v. State*, 885 N.E.2d 590, 596 (Ind. 2008).

[5] The Fourth Amendment guarantees people the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" "[W]hen police impound a vehicle and inventory its contents, they effect a search and seizure, and both measures must be reasonable—that is, executed under a valid warrant or a recognized exception to the warrant requirement." *Wilford v. State*, 50 N.E.3d 371, 374 (Ind. 2016). A well-recognized exception to the warrant requirement is a valid inventory search. *Gibson v. State*, 733 N.E.2d 945, 956 (Ind. Ct. App. 2000). "The rationale for the inventory exception is three-fold: 1) protection of private property in police custody; 2) protection of police against claims of lost or stolen property; and 3) protection of police from possible danger." *Id.* Thus, the inventory search serves an administrative rather than investigatory purpose. *Wilford*, 50 N.E.3d at 375. The State bears the burden of proving that the inventory search was reasonable. *Id.* The threshold question in determining the validity of an inventory search is proper impoundment, and impoundment is reasonable if authorized by statute or the police's discretionary community-caretaking function. *Id.* at 374–75.

Because neither party contends that the inventory search was authorized by statute, we focus on whether the search was reasonable pursuant to the police's community-caretaking function.

[6] The Indiana Supreme Court has stated that "police may discharge their caretaking function whenever circumstances compel it, but also that a decision to impound must be exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Id.* at 375 (internal citations omitted). The rule that the standardized criteria or established routine must exist as a precondition to a valid inventory search is designed to ensure that an inventory search is not a pretext "for general rummaging in order to discover incriminating evidence." *Fair v. State*, 627 N.E.2d 427, 435 (Ind. 1993) (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)). Thus, in order for the State to prevail on the question of whether an impoundment was warranted in terms of the community-caretaking function and was not pretextual, it must establish that (1) consistent with objective standards of sound policing, the officer believed that the vehicle posed a threat of harm to the community or was itself imperiled, and (2) the officer's decision to impound the vehicle adhered to established departmental routine or regulation. *Wilford*, 50 N.E.3d at 376.

[7] We conclude that the State failed to establish that Officer Trotter's decision to impound Smith's vehicle adhered to established departmental routine or regulation. While we do not require evidence of the department's written procedure, we do require more than conclusory testimony from an officer. *Id.* An officer's testimony provides adequate evidence of the department's

impoundment procedure if "it outlines the department's standard impound procedure and specifically describes how the decision to impound adhered to departmental policy or procedure—as opposed to an officer's generalized assertion." *Id.* at 377 (internal quotations omitted). Here, Officer Trotter testified that the inventory search of Smith's vehicle was pursuant to a "typical tow policy." Tr. Vol. II p. 112. Officer Trotter also testified that it would be typical for him to request a tow of a vehicle when there is no licensed driver present. Officer Trotter's testimony regarding impoundment is at best a generalized assertion that the impoundment and search were conducted pursuant to the department's procedure; however, it fails to specially describe how the impoundment decision adhered to the department's procedure. Moreover, the State acknowledges that "there was not sufficient evidence of the [Indianapolis Metropolitan Police Department] inventory policy admitted at trial." Appellee Br. p. 14. Given the conclusory nature of Officer Trotter's testimony and the State's concession, we conclude that the trial court erroneously admitted the evidence obtained from the inventory search.

[8] The State argues that the search was a valid search incident to arrest, another established exception to the warrant requirement. While Officer Meyer testified that it was his belief that this was a search pursuant to a lawful arrest, the State never adopted or made that argument at trial. Therefore, the State has waived that argument for appellate review. *See Whitfield v. State*, 699 N.E.2d 666, 669 (Ind. Ct. App. 1998) (concluding that an argument raised for the first time on appeal is waived and will not be considered), *trans. denied*.

The judgment of the trial court is affirmed in part and reversed in part, vacating Smith's conviction for Class A misdemeanor carrying a handgun without a license.

Crone, J., concurs.

Tavitas, J., concurs in result with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Carl Smith,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

Court of Appeals Case No.
18A-CR-3009

**Tavitas, Judge, concurring in result with opinion.**

I concur in result with the majority's opinion. I write separately, however, to emphasize the unusual circumstances here.

In *Wilford v. State*, 50 N.E.3d 371, 375-76 (Ind. 2016), our Supreme Court noted that the State is required to satisfy both of the following elements to prove that the decision to impound a person's vehicle without a warrant was reasonable:

> (1) Consistent with objective standards of sound policing, an officer must believe the vehicle poses a threat of harm to the community or is itself imperiled; and

> (2) The officer's decision to impound adhered to established departmental routine or regulation.

*Wilford*, 50 N.E.3d at 375-76.

[12] It is perfectly clear that the first prong of the test was met here. The officer observed multiple traffic violations and stopped the vehicle that Smith was driving. An adult female and four children were also in the vehicle. Smith, who adheres to the sovereign citizen ideology, repeatedly refused to identify himself. The officer was eventually able to identify Smith and learned that Smith's driver's license was suspended. The female passenger also lacked a valid driver's license. The officer testified that Smith's vehicle posed a hazard to public safety because it was parked in the single travel lane of the road, which had no on-street parking lane, and the officers decided to tow the vehicle. The officers then completed an inventory search of the vehicle and discovered the handgun. As the vehicle was parked in the travel lane of a road and neither adult in the vehicle possessed a valid driver's license, towing of the vehicle was clearly consistent with sound policing.

[13] As for the second element, it seems clear that the officer's decision to impound would have complied with any department's impoundment policy. Our Supreme Court, however, has held that "[o]fficer testimony provides adequate evidence of departmental impound policy if it outlines the department's standard impound procedure and specifically describes how the decision to impound adhered to departmental policy or procedure." *Wilford*, 50 N.E.3d at 377. On appeal, the State concedes that "there was not sufficient evidence of the IMPD inventory policy admitted at trial." Appellee's Br. p. 14. Because the State failed to present sufficient evidence at the trial that the officer's

decision adhered to established departmental routine or regulation, I am constrained to find that the trial court erroneously admitted the evidence obtained during the search of the vehicle.

[14] The State also argues that the evidence was admissible under the search incident to arrest exception because it was reasonable to believe that evidence relevant to the crime of arrest would be found in the vehicle.[1] Specifically, the State contends the officers were looking in the vehicle for Smith's identification. The majority holds that the State waived this argument. I disagree that the State waived this argument. We may affirm a trial court's ruling on the admissibility of evidence "on any theory supported by the evidence." *Satterfield v. State*, 33 N.E.3d 344, 352 (Ind. 2015). I conclude, however, that the State failed to present sufficient evidence at the trial to establish that the search incident to arrest exception is applicable here. At the time of the search, the officers had already identified Smith and already learned that his driver's license was suspended. A search of the vehicle would not have revealed evidence that Smith refused to identify himself or drove while suspended. For these reasons, I concur in result.

---

[1] Under the search incident to arrest exception, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search *or* it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. 332, 351, 129 S. Ct. 1710, 1723 (2009) (emphasis added). The State does not argue that Smith was within reaching distance of the passenger compartment at the time of the search; rather, the State argues only that it was reasonable to believe the vehicle contained evidence of the offense of arrest.